IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| Michelle Ball, Ted Toms, Sofia Chabot, Amelia Ball, Eliza Ball, Jessica Mullen and Lisa Metzger, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | Civil Action No. 3:23-cv-00867-RJC-DCK |
| East Franklin Superette and Kitchen LLC dba East Frank Superette and Kitchen, | ) ) ) ) ) |
| Defendant. | ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

Plaintiffs Michelle Ball, Ted Toms, Sofia Chabot, Amelia Ball, Eliza Ball, Jessica Mullen and Lisa Metzger ("Plaintiffs") move, pursuant to Rule 12(b), Federal Rules of Civil Procedure ("FRCP") to dismiss all four counterclaims asserted by Defendant East Franklin Superette and Kitchen LLC dba East Frank Superette and Kitchen ("Defendant" or "East Frank") for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim upon which relief may be granted.

I. INTRODUCTION

For many months Plaintiffs have exercised their First Amendment rights under the U.S. Constitution by speaking out at City of Monroe City Council meetings and by protesting Defendant's exposure of children to sexually-suggestive drag show entertainment events at Defendant's restaurant. Plaintiffs publicized their First Amendment activities on social media by posting photographs of themselves and others holding signs with messages opposing Defendant's

activities, including signs stating, *inter alia,* "Stop Grooming Children – Let Kids Be Kids" and "Stop Sexualizing Children."

In retaliation against Plaintiffs' exercise of Plaintiffs' First Amendment rights, Defendant copied the images that Plaintiffs posted of themselves protesting Defendant's drag show events, manipulated the images to make it appear that Plaintiffs actually supported Defendant and its drag show events, and posted the manipulated images to Defendant's social media pages to promote Defendant's drag show events and its restaurant offerings. When Plaintiffs objected to Defendant's use of their images and likenesses to make Plaintiffs appear as unpaid promoters of Defendant and its offensive activities, Defendant refused to take down the manipulated photos and instead taunted the Plaintiffs on social media.

Plaintiffs brought this action against Defendant to cause Defendant to take down the manipulated images, cease the use of Plaintiffs' images and likenesses to promote the very activities Plaintiffs had protested, and to obtain lawful remedies due them because of Defendant's willfully tortious and unlawful activities, including false advertising and false association or sponsorship under the Lanham Act, 15 U.S.C. § 1125(a).

In response to Plaintiffs' *Amended Complaint* [Doc. 13], Defendant filed a Motion to Dismiss Plaintiffs' Amended Complaint with a brief in support [Doc. 17, 17-1] along with Defendant's *Answer and Counterclaims* [Doc. 18], in which Defendant asserted four counterclaims against Plaintiffs for defamation, unfair and deceptive trade practices and civil conspiracy because Plaintiffs dared to hold Defendant accountable for Defendant's unlawful actions pursuant to federal and state law. Defendant's counterclaims should be dismissed entirely for lack of subject matter jurisdiction, as they are permissive counterclaims that do not arise out of the Lanham Act violations asserted by Plaintiffs against Defendant but rather require an

independent basis of federal jurisdiction over those claims, which are solely based in state law. Alternatively, the counterclaims should be dismissed against three of the seven Plaintiffs due to Defendant's utter failure to allege a single act attributable to any of the three that would support any counterclaim. Defendant's defamation *per se* and defamation *per quod* counterclaims should be dismissed against all Plaintiffs because the statements are true, or in the alternative are mere hyperbole and constitute expressed opinions protected by the First Amendment. Defendant's unfair and deceptive trade practices claim asserted against the Plaintiffs should be dismissed because Plaintiffs' alleged acts were not "in commerce" as defined by N.C. Gen. Stat. 75-1.1 but rather are protected by the First Amendment. Finally, Defendant's civil conspiracy claim against the Plaintiffs should be dismissed because there exists no underlying crime or tortious act in which Plaintiffs have conspired to engage and due to the chilling effect on freedom of speech that would result from the survival of this claim against citizens exercising their Constitutional rights. Defendant's counterclaims comprise nothing more than a spurious attempt to create leverage and the Court should dismiss the counterclaims in their entirety.

## II. THE MOTION TO DISMISS STANDARDS FAVOR DISMISSAL OF THE COUNTERCLAIMS

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).

Here, Defendant has the burden of proving that subject matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991). When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the

pleadings without converting the proceeding to one for summary judgment." *Id.* The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.; see also, Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999).

Further, a motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). To defeat a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted); *see Twombly*, 550 U.S. at 570; *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

When considering a 12(b)(6) motion, the factual allegations and reasonable inferences based thereon are construed "in the light most favorable to the [nonmoving party]." *Massey v. Ojaniit*, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted). A complaint's legal conclusions, arguments, unwarranted inferences, and unreasonable conclusions need not be accepted by the Court. *See Giarratano*, 521 F.3d at 302. Rather, a plaintiff's factual allegations must move the cause of action beyond the realm of "mere possibility" into "plausibility." *Iqbal*, 556 U.S. at 678–79. As set forth below, none of the Defendant's four counterclaims enter the realm of "plausibility" and, consequently, all four counterclaims must be dismissed.

### III. ARGUMENT SUPPORTING DISMISSAL OF ALL COUNTERCLAIMS

#### A. The Court Should Decline to Exercise Subject Matter Jurisdiction Over Defendant's Permissive Counterclaims

Subject matter jurisdiction is a threshold issue for the Court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998); *Jones v. American Postal Workers Union*, 192 F.3d 417,

4

422 (4th Cir. 1999); *Iqbal*, 129 S. Ct. at 1945 ("Subject matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt"). The party asserting federal jurisdiction has the burden of proving that subject matter jurisdiction exists. *See, e.g., Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). "For cross-claims to be proper, they must either carry an independent basis for subject matter jurisdiction or must fall under the Court's supplemental jurisdiction." *Jackson Nat. Life Ins. Co. v. Pittman*, No. 5:12-CV-790-BO, 2014 WL 1472112, at *2 (E.D.N.C. Apr. 15, 2014), *quoting Banner Life Ins. Co. v. Bonney,* 2:11CV198, 2011 WL 5027498 (E.D. Va. Oct.21, 2011).

The Court should decline to exercise subject matter jurisdiction over the Defendant's four counterclaims because they are permissive counterclaims over which the Court does not have an independent basis for subject matter jurisdiction. Rule 13, F.R.C.P., provides that a pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." A pleading "may state as a counterclaim against an opposing party any claim that is not compulsory," Rule 13(b), F.R.C.P., but the federal court need not assert subject matter jurisdiction over such a permissive counterclaim. Permissive counterclaims require a basis for federal jurisdiction independent of the opposing party's claims. *Aldens, Inc. v. Packel,* 524 F.2d 38, 52 (3d Cir. 1975).

Plaintiffs assert claims under Section 43(a)(1)(A) and (B) of the federal Lanham Act, 15 U.S.C. § 1125(a). The claims arise out of Defendant's unlawful manipulation of photographs of Plaintiffs, and Defendant's use of those manipulated photographs to falsely connote that Plaintiffs endorse or approve of Defendant's restaurant and entertainment offerings, and to

advertise falsely Defendant's business. Defendant's four counterclaims, asserting defamation, civil conspiracy and violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. 75-1.1, seek to chill Plaintiffs' speech by accusing Plaintiffs of uttering falsities about Defendant. The counterclaims go to the content and meaning of Plaintiffs' speech, while Plaintiffs' *Amended Complaint* challenges Defendant's business practices and deceptive advertising. East Frank's counterclaims are not compulsory, as they do not arise out of the "transaction or occurrence that is the subject matter of the original action," namely the photo manipulation and publication by Defendant to promote Defendant's business. The counterclaims also challenge the speech and meaning of messages made by some of the Plaintiffs that are not subject to the photo manipulation and false advertising by Defendant. The Court should decline to exercise jurisdiction over the counterclaims.

### B. The Counterclaims Should Be Dismissed against Plaintiffs Ted Toms, Eliza Ball and Sofia Chabot Due to Defendant's Failure to Allege any Specific Unlawful Conduct by Any of Them

In its *Answer and Counterclaims* [Doc. 18], Defendant sets forth some explosive accusations generally about Americans who exercise their First Amendment rights to protest exposing children to the drag performers. In Defendant's words, individuals who protest or oppose these sexually-charged events that "subvert and celebrate gender expressions" [Doc. 18, Counterclaims, ¶ 7] consist of "right-wing rabblerousers in search of a political punching bag" and "bullies" who have "no regard to the consequences" of expressing their opinions about drag shows and their impact on children. *Id.* at ¶ 8. Pushing the accusation further, Defendant argues that accusations that drag performers and the businesses that host them are "sexually exploiting, grooming, or abusing children" are "false claims [that] lead to violence." *Id.* at ¶ 9.

Defendant does not stop with these generalized accusations, however. Immediately after

stating that drag show opponents generally make "false claims [that] lead to violence," Defendant gallingly asserts that "Plaintiffs are part of these disturbing trends." [Doc. 18, Counterclaims, ¶ 10]. Defendant pleads, "Plaintiffs regularly lie about East Frank, mischaracterize its drag performances, and accuse it of child abuse, sexual exploitation, and child grooming." *Id.* Defendant then provides several "examples" of what it calls "reckless, dangerous nonsense," citing 18 social media or website videos or posts made by some of the Plaintiffs. *Id.* at ¶ 11.

Of the 18 examples included in Defendant's counterclaims, not once does Defendant refer to three of the seven Plaintiffs by name. Ted Toms, Sofia Chabot and Eliza Ball are not cited as having made a single statement or social media post that Defendant alleges constitutes its examples of "Plaintiffs' coordinated campaign of dangerous misinformation." Defendant refers to Plaintiff Lisa Metzger as responsible for between 8-11 of the Instagram videos or other social media posts. Defendant refers to Plaintiff Michelle Ball and Plaintiff "Amelia" (presumably Amelia Ball) as each responsible for between 3-6 of the social media or Internet posts. Jessica Mullen is named once. But Plaintiffs Ted Toms, Sofia Chabot and Eliza Ball are not identified as responsible for any of the conduct underlying Defendant's counterclaims.

At a minimum, the three Plaintiffs that are not named in a single instance following the case caption should be dismissed from the counterclaims due to Defendant's complete failure to attribute any conduct to them. Defendant does attempt to assert a catch-all allegation to implicate all Plaintiffs at Paragraph 12 of its counterclaims, alleging:

> each of the Plaintiffs has at times (including on June 13, 2023) appeared in public (on June 13, 2023, it was in front of Monroe City Hall while on other occasions Plaintiffs stood on the sidewalk outside of East Frank) with signs that state "GROOMING EVENT HERE TODAY," THIS IS CHILD ABUSE," STOP GROOMING CHILDREN," "WHY DO DRAG QUEENS WANT AN AUDIENCE OF CHILDREN," and "STOP SEXUALIZING CHILDREN." Plaintiffs intended these signs to refer to East Frank and individuals seeing these signs at such times and locations understood them to be referring to East Frank.

[Doc. 18, Counterclaims, ¶ 12]. This allegation, however, still lacks the specificity necessary to move the allegation against Ted Toms, Sofia Chabot or Eliza Ball from "possible" to "plausible." Defendant has not attributed any statement to any of these three Plaintiffs, nor has Defendant asserted why any of these three Plaintiffs' signs, or other statements, are false or defamatory.

Defendant's counterclaims, as to these three Plaintiffs and more generally as to all seven Plaintiffs, are "replete with claims that appear to be generic or superfluous, with a complete lack of any specificity." *Davis v. Brock & Scott LLC*, 2023 WL 9546903 *4, Case No. 3:23-cv-492-KDB-DCK (*Memorandum and Recommendation,* Dec. 28, 2023). "Such haphazard pleading suggests this Complaint follows a 'shotgun approach' that the court disfavors." *See Parks v. Boston Scientific Corp.*, 2018 WL 1040103, at *1 (*citing Holland v. Wells Fargo Home Mortgage,* 2015 WL 1432458 at *1 (W.D.N.C. Feb. 13, 2015) ("A form complaint 'customized to add the particulars' is 'ineffective' and makes it more difficult for those with actual claims to have their day in court.").

Defendant did not bother to identify any specific action taken by Ted Toms, Sofia Chabot or Eliza Ball that constitutes defamation, or an unfair and deceptive trade practice, or a civil conspiracy. The generalized allegations about "Plaintiffs" do not even connect any individual Plaintiff with any particular sign or message conveyed, or assert any injury caused by the holding or making of a particular message. These three Plaintiffs' names do not appear in the counterclaims following the case caption. The Court should dismiss all claims against them pursuant to Rule 12(b)(6).

### C. Both Defamation Claims Should Be Dismissed Because the Alleged Statements are Either True or, in the Alternative, are Mere Hyperbole and Expressions of Opinion Protected by the First Amendment.

To prove defamation in North Carolina, the "plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Cannon v. Peck*, 36 F.4th 547, 559 (4th Cir. 2022) (citing *Griffin v. Holden*, 180 N.C. App. 129, 133 (2006)). Here, Defendant's *Answer and Counterclaims* contain admissions that Defendant hosts drag shows for its customers, including children, so the allegedly defamatory statements attributed to the plaintiffs are actually true. For example, Defendant admits that "on occasion, [it] hosts drag shows." [Doc. 18, Answer, ¶ 18]. Further, Defendant admits that "from time to time, [it] hosts drag performances." [Doc. 18, Counterclaims, ¶¶ 1, 10]. Defendant also describes "all-age drag shows" as "drag performance[s] that occur[] at a venue with no customer age restriction," meaning, like Defendant, it is "open for family attendance," including children. [Doc. 18, Counterclaims, ¶ 8].

The statements alleged to have been made by the plaintiffs are, in one form or another, statements that Defendant engages in grooming and sexualizing children by conducting all-age drag shows, which are commonly known to be shows featuring cross-dressing adults who dance

or otherwise perform in a burlesque or other provocative style for patrons. The term "grooming" refers to the act of attempting to indoctrinate an individual into believing that biological sex is a fluid concept, meaning it is normal behavior for males to dress and act as females (or claim to be females), and vice versa. The term "sexualizing" refers to the act of making others see someone or something in sexual terms. Thus, since Defendant admits in its pleading that it holds drag shows and that it is open for family attendance, including children, alleged statements by plaintiffs that Defendant engages in grooming and sexualizing children are simply true. *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21, 68-69 (2020) (finding that a statement is not defamatory if it is substantially true).

In the alternative, the terms "grooming" and "sexualizing" (and even "child abuse") – viewed within the full context of how those terms were allegedly used by the plaintiffs to protest Defendant's all-age drag shows – are too loose, figurative, or hyperbolic to constitute defamatory statements. "In determining whether a statement can be reasonably interpreted as stating actual facts about an individual, courts look to the circumstances in which the statement is made," specifically, "whether the language used is loose, figurative, or hyperbolic language, as well as the general tenor of the article" when the words are viewed "within their full context." *Desmond v. News & Observer Pub. Co.*, 241 N.C. App. 10, 17 (2015). If the language meets that standard, then it is considered opinion, as opposed to an expression of fact, and not actionable as defamation as a matter of law. Here, the alleged statements that Defendant engages in grooming, sexualizing, or even child abuse – when viewed in "full context" – are "rhetorical hyperbole and expressions of opinion not asserting provable facts." *Jones v. Lowe's Companies, Inc.*, 402 F. Supp. 3d 266, 285 (W.D.N.C. 2019), *aff'd*, 845 F. App'x 205 (4th Cir. 2021).

In *Jones*, the plaintiff's defamation claim was based on the defendant's publicized statement that it made after the plaintiff commenced an employment discrimination lawsuit. The statement included a number of statements, including the following: (i) "Any suggestion that Lowe's—or any individual executive at Lowe's—discriminated against Mr. Jones because of his race is completely unfounded and irresponsible"; and (ii) "Mr. Jones' allegations have no basis in reality." Applying North Carolina law, Judge Kenneth Bell dismissed the defamation claim, holding that those statements were protected speech because they were "rhetorical hyperbole and expressions of opinion not asserting provable facts." *Jones*, 402 F.Supp.3d at 285.

Similarly, here, if the Court is unable to conclude that all-age drag shows for children necessarily equates to grooming and sexualizing children, then the alleged statements of "grooming" and "sexualizing" (and even "child abuse") should be considered mere "rhetorical hyperbole and expressions of opinion not asserting provable facts." *Jones*, 402 F.Supp.3d at 285; *see, e.g., Murphy v. Rosen*, No. UWY-CV-20-6056754-S, 2022 WL 1538711, at *10 (Conn. Super. Ct. May 16, 2022) ("Although the court understands and appreciates the plaintiff's contention that whether someone is or is not a 'white supremacist' is capable of objective confirmation based on the plaintiff's specific definition of that term, the court nevertheless concludes that given the overall tone and tenor of the online political debate, no reasonable jury could conclude that the defendant's remarks constituted anything other than the defendant's nonactionable opinion.").

Indeed, the First Amendment requires that statements "be provable as false before there can be liability under state defamation law." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19 (1990); *see also Snyder v. Phelps,* 580 F.3d 206, 218 (4th Cir. 2009) ("The First Amendment will fully protect statements that cannot reasonably be interpreted as stating actual facts.") (internal quotation marks omitted); *RE Carroll Mgmt. Co. v. Dun & Bradstreet, Inc.*, No. 1:23-CV-483, 2023 WL 9169727,

at *3 (M.D.N.C. Dec. 12, 2023) (dismissing libel *per se* and libel *per quod* claims on First Amendment grounds). Whether a statement is one of fact or rhetorical hyperbole and an expression of opinion protected by the First Amendment is a question of law for the court based on a fact-specific analysis of the language and context. *See Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998).

Consequently, Defendant has failed to state a claim for defamation – whether it be defamation *per se* or defamation *per quod*.

### D. The Defamation *Per Se* Claim Should Additionally Be Dismissed Because the Alleged Statements Do Not Fall Into Any of the Three Categories of Defamatory Utterances Considered Defamation *Per Se.*

Defamation covers two distinct torts, libel and slander. *Phillips v. Winston–Salem/Forsyth County Bd. of Educ.*, 117 N.C. App. 274, 277 (1994), *disc. review denied*, 340 N.C. 115, 456 (1995). "In general, libel is written while slander is oral." *Id*. "Libel *per se* is a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace. *Id*. Similarly, slander *per se* is "an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Id*. In such cases, the plaintiff does not have to allege or prove malice or special damages; they are presumed. *See Donovan v. Fiumara*, 114 N.C. App. 524, 527-28 (1994). Since none of the plaintiffs' alleged defamatory statements fall into these categories, the claim for defamation *per se* must be dismissed.

First, Defendant cannot plausibly allege that any of the statements listed or described in the Counterclaims constitute accusations that Defendant, a company that operates a restaurant, "committed a crime involving moral turpitude" (or that Defendant "has a loathsome disease"). "The 'law contemplates that in order to be actionable *per se* a false statement must impute that a person is guilty of a punishable offense.'" *Donovan*, 114 N.C. App. at 531 (quoting *Williams v. Freight Lines and Willard v. Freight Lines*, 10 N.C. App. 384, 388 (1971) (accusing plaintiffs of being "gangsters" did not charge them with a "specific crime for which they could be indicted and punished"). None of the alleged statements constitute accusations that Defendant is guilty of a punishable offense, let alone a crime involving moral turpitude.

Rather, as stated above, the statements alleged to have been made by the Plaintiffs are, in one form or another, statements that people who perform or facilitate all-age drag shows in the restaurant operated by Defendant engage in "grooming" and "sexualizing" children. While grooming and sexualizing children can potentially be accompanied by, or can potentially lead to, conduct that constitutes a punishable offense, currently, in North Carolina, it is not illegal for an individual to indoctrinate a child into believing that biological sex is a fluid concept or to make a child see someone or something in sexual terms at a drag show, assuming the absence of nudity.

Defendant also states that the Plaintiffs used the term "child abuse," which in some circumstances could obviously constitute a punishable offense. However, Defendant only alleges one such statement that appeared on a sign or signs held by an unnamed Plaintiff or Plaintiffs in front of Monroe City Hall or on the sidewalk outside of Defendant's restaurant reading "THIS IS CHILD ABUSE." Aside from not alleging which, if any, of the Plaintiffs held such a sign and whether such a sign was held outside of Defendant's restaurant or held someplace else, the statement on the sign does not describe the "This" in "This is Child Abuse." Rather, Defendant

13
Case 3:23-cv-00867-RJC-DCK   Document 25-1   Filed 05/23/24   Page 13 of 20

concedes that the sign requires an explanation that "Plaintiffs intended these signs to refer to East Frank and individuals seeing these signs at such times and locations understood them to be referring to East Frank." [Doc. 18, Counterclaims, ¶ 12]. Yet, claims for defamation *per se* are only established "when considered alone without innuendo or explanation." *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 583 (2002); *see Farmer v. Lowe's Companies, Inc.*, 188 F. Supp. 2d 612, 615 (W.D.N.C. 2001) ("The North Carolina courts have defined libel *per se* as a publication which, when considered alone without explanatory circumstances ….").

Finally, while the alleged statements by Plaintiffs related to conduct occurring at Defendant's restaurant, the statements do not constitute allegations that impeach Defendant in its trade, business, or profession. Defendant is a company that operates a restaurant, so it is not a businessperson. "Defamation of this class ordinarily includes charges made by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct in business." *Badame v. Lampke*, 242 N.C. 755, 757 (1955) (*citing Broadway v. Cope*, 208 N.C. 85 (1935); 33 Am.Jur., Libel and Slander, Sections 68 and 70).

In addition, since Defendant boasts about its all-age drag shows in its pleading, Defendant cannot plausibly claim that the Plaintiffs have imputed to Defendant conduct that is "derogatory to [its] character and standing as a business and tending to prejudice [it] in [its] business." *Badame*, 242 N.C. at 757. Defendant touts that "[d]rag is a type of performance art," in which "[i]ts practitioners challenge traditional gender norms, often by assuming a hyper-stylized persona with exaggerative feminine or masculine features—an intentionally over-the-top character that the drag performer uses 'to subvert and celebrate gender expressions.'" [Doc. 18, Counterclaims, ¶ 7]. Indeed, Defendant brags that drag shows are a "subcultural phenomenon." *Id.* at ¶ 8. Since Defendant is proud of its all-age drag shows, which it considers a "phenomenon," it cannot contend

14
Case 3:23-cv-00867-RJC-DCK    Document 25-1    Filed 05/23/24    Page 14 of 20

that alleged statements about those shows are "derogatory to [its] character and standing as a business and tending to prejudice [it] in [its] business." Rather, the alleged statements simply attempt to describe the perceived impact of its business on children.

As a result, the Court should dismiss the defamation *per se* claim for this additional reason.

### E. The Defamation *Per Quod* Claim Should Be Dismissed Because Defendant Has Not Sufficiently Alleged Special Damages.

A statement that is "not obviously defamatory" but becomes so "when considered with innuendo, colloquium, and explanatory circumstances" is defamation *per quod. See Cannon,* 36 F.4th at 559 (*citing Griffin,* 180 N.C. App. at 133). Unlike defamation *per se*, defamation *per quod* requires proof of malice and special damages. *See Izydore v. Tokuta*, 242 N.C. App. 434, 445 (2015) (*citing Beane v. Weiman Co.*, 5 N.C. App. 276, 277 (1969)). Special damages means a pecuniary loss caused by the defamation. *See Gibson v. Mut. Life Ins. Co. of New York*, 121 N.C. App. 284, 289 (1996).

However, allegations of lost profits that are speculative are not sufficient to sustain claims like defamation *per quod* that require an allegation of pecuniary loss. *Olivetti Corp. v. Ames Business Systems, Inc.,* 319 N.C. 534, 546 (finding that, with respect to a claim for misrepresentation, the plaintiff had failed to present sufficient evidence in support of the trial court's award of damages to show with reasonable certainty that the plaintiff lost an opportunity to make future profits); *see Mann v. Swiggett*, No. 5:10-CV-00172-D, 2012 WL 5507255, at *7 (E.D.N.C. Oct. 9, 2012), *report and recommendation adopted*, No. 5:10-CV-172-D, 2012 WL 5512453 (E.D.N.C. Nov. 14, 2012) (finding that the plaintiff "offered no specific facts regarding his alleged lost consulting opportunities [in that] [h]e did not name any potential clients or the amount of money he might have earned but for [the defendant's] libel."). In *Mann*, the court held that there was insufficient evidence of lost profits, stating that the defendant's testimony "is far

15
Case 3:23-cv-00867-RJC-DCK   Document 25-1   Filed 05/23/24   Page 15 of 20

too speculative to meet his burden of proving special damages in an amount based upon a standard that will 'allow the finder of fact to calculate the amount of damages with reasonable certainty.'" *Mann*, 2012 WL 5507255, at *7 (quoting *Olivetti Corp.*, 319 N.C. at 547-48, 356 S.E.2d at 586).

Here, Defendant's only allegation of pecuniary loss is that it "lost profits, including but not limited to the profits it would have realized from the patronage of the five families referenced in Metzger's October 1, 2023, Facebook post." [Doc. 18, Counterclaims, ¶ 36]. The Facebook post in question is described by Defendant as follows: "On October 1, 2023, Metzger, Amelia, and/or Michelle posted a video to Protect Monroe gloating that they were able to divert business from East Frank, stating that they prevented 'five families from entering into East Frank because of letting children into their drag shows.'" *Id.* at ¶ 11(o). Defendant's claim to lost profits, including profits it "would have realized from the patronage of the five families," is incredibly speculative and incapable of calculation with reasonable certainty, as required. Defendant did not allege that it even knows the identities of the five families, let alone allege Defendant's calculation of the patronage that Defendant asserts was lost due to the Plaintiffs' alleged statements. Defendant did not allege how many members there were in each family, including how many adults and how many children. Defendant did not allege anything to suggest it could possibly know what they would have ordered to eat and/or drink, if anything.

As a result, the Court should dismiss the defamation *per quod* claim for this additional reason.

### F. Defendant's Unfair & Deceptive Trade Practices Act Claim Should Be Dismissed Because the Acts Complained of Were Not "Trade Practices"

Defendant's counterclaim against all seven Plaintiffs should be dismissed because the acts complained of by Defendant are not "in commerce" but rather constitute the Plaintiffs' exercise of their First Amendment right of freedom of speech. Defendant, a limited liability company

operating a restaurant and selling food and entertainment services, has not alleged that Plaintiffs are acting "in commerce" to sell or advertise any good or service. Defendant fails to state a claim upon which relief may be granted under the North Carolina Unfair & Deceptive Trade Practices Act., N.C. Gen. Stat. § 75-1.1.

To set out a valid claim for unfair and deceptive trade practices, a plaintiff must allege that (1) defendant has committed unfair or deceptive acts or practices; (2) defendant's conduct was in commerce or affected commerce; (3) defendant's conduct caused injury to plaintiff. *First Atl. Mgmt. Corp. v. Dunlea Realty Co.,* 131 N.C.App. 242, 252 (1998); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417 (2000).

The term "commerce" is defined as "all business activities, however denominated," other than certain professional services. N.C. Gen. Stat. § 75–1.1(b). "Courts have viewed the rights of businesses to sue other businesses for violations of the UD[T]PA with a much more skeptical eye." *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F.Supp.3d 1011, 1020 (E.D.N.C. 2015). The UDTPA only provides a business with a cause of action:

> where 1) the plaintiff-business is in the marketplace acting as a consumer or is otherwise engaged in commercial dealing with defendant, *see [United Laboratories, Inc. v. ]Kuykendall*, 322 N.C. 643, 370 S.E.2d 375 [ (1988) ]; *Winston[ Realty Co., Inc. v. G.H.G., Inc.]*, 314 N.C. [90, ]at 97–98, 331 S.E.2d 677 [ (1985) ]) [2]] the businesses are competitors, *see ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 48 (4th Cir. 1983), or 3) the conduct giving rise to the cause of action has a negative effect on the consuming public. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 519–20 (4th Cir. 1999).

*Exclaim Mktg.*, 134 F.Supp.3d at 1020; *see also F. Ray Moore Oil Co. v. State*, 80 N.C. App. 139, 142-43 (1986) ("The statute is aimed at unfair and deceptive practice by those engaged in business for profit."). Here, the Plaintiffs engaged in speech, not "business for profit." The UDTPA does not apply to the conduct alleged by Defendant.

Still further, a claimant may not use the UDTPA or other "non-reputational tort claims" to recover defamation-type damages "without satisfying the stricter (First Amendment) standards of a defamation claim." *Food Lion, Inc.,* 194 F.3d at 522; *see also Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (holding plaintiff cannot recover damages for intentional infliction of emotional distress claim for publication of opinion protected by the First Amendment). As in *Carroll Mgmt. Co.,* No. 1:23-CV-483, 2023 WL 9169727, at *4–5, in which the Middle District of North Carolina declared that the Carroll Companies could not "end-run around First Amendment strictures" by seeking the same alleged damages to their reputation that they could not obtain through their defamation claim, recovery under the UDTPA should be "foreclosed by the First Amendment" in this case.

### G. Defendant's Civil Conspiracy Claim Should Be Dismissed for Failure to State a Claim

"While there is no freestanding cause of action for 'civil conspiracy,' the elements of a claim seeking damages for the wrongful acts committed in the course of a civil conspiracy in North Carolina would appear to be:

> (1) an agreement between two or more persons to commit a wrongful act;
> (2) an act in furtherance of the agreement; and
> (3) damage to the plaintiff as a result of the wrongful act."

*Barber v. Countrywide Home Loans, Inc.*, No. 2:09-CV-40-GCM, 2010 WL 398915, at *6 (W.D.N.C. Jan. 25, 2010) (finding no viable underlying claims for anything, subjecting the civil conspiracy claim to outright dismissal). "As the district court has recently recognized, this claim cannot be brought independent of properly-alleged claims for underlying wrongdoing, making such claim subject to dismissal if the underlying claims for wrongful conduct are dismissed." *Id*. (*citing Precision Components, Inc. v. C.W. Bearing USA, Inc.*, 3:06–CV–259 (W.D.N.C. Dec. 16, 2008) (Reidinger, J.)).

Here, Defendant has not properly alleged claims of defamation or unfair and deceptive trade practices against Plaintiffs, and, as result, Defendant's claim of civil conspiracy is subject to dismissal. *See Barber*, 2020 WL 398915, at *6. Even if the Court finds that Defendant's claims of defamation and/or unfair and deceptive trade practices survive dismissal, the Court nevertheless should dismiss the civil conspiracy claim because the conspiracy alleged by Defendant consists of an agreement by the Plaintiffs to exercise their First Amendment rights, not to commit a wrongful act. Allowing this cause to survive dismissal would create a chilling effect on First Amendment speech activities.

## IV. CONCLUSION

Plaintiffs respectfully submit that Defendant's counterclaims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, 12(b)(6) for failure to state a claim.

Dated: May 23, 2024

s/ Jason M. Sneed
Jason M. Sneed (N.C. Bar No. 29593)
Megan E. Sneed (N.C. Bar No. 38525)
**SNEED PLLC**
445 S. Main St., Suite 400
Davidson, NC 28036
Tel.: 844-763-3347
JSneed@SneedLegal.com
MSneed@SneedLegal.com
Litigation@SneedLegal.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this the 23rd day of May, 2024, the foregoing *Plaintiff's Memorandum in Support of Motion to Dismiss Defendant's Counterclaims* was served via electronic means through CM/ECF on the following counsel of record:

Bo Caudill
bocaudill@villmercaudill.com
Sophia M. Pappalardo
spohiapappalardo@villmercaudill.com
VILLMER CAUDILL, PLLC
P.O. Box 18186
Charlotte, NC 28218

*Counsel for Defendant*

s/ Jason M. Sneed
*An Attorney for Plaintiffs*