IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |
|---|---|
| Michelle Ball, Ted Toms, Sofia Chabot, Amelia Ball, Eliza Ball, Jessica Mullen and Lisa Metzger, | ) ) ) ) |
| Plaintiffs, | ) ) ) Civil Action No. 3:23-cv-00867-RJC-DCK |
| v. | ) ) |
| East Franklin Superette and Kitchen LLC dba East Frank Superette and Kitchen, | ) ) ) ) ) |
| Defendant. | ) |

**PLAINTIFFS' REPLY SUPPORTING THEIR MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 12 and Local Rule ("LR") 7.1(e), Plaintiffs Michelle Ball, Ted Toms, Sofia Chabot, Amelia Ball, Eliza Ball, Jessica Mullen and Lisa Metzger ("Plaintiffs") herein reply in support of their *Motion to Dismiss Defendant's Counterclaims* (Doc. 25).

## I. INTRODUCTION

Defendant East Frank Superette and Kitchen, LLC ("East Frank") argues that "Plaintiffs knew exactly what they were doing" when they protested East Frank's hosting of drag shows open to children. Of course Plaintiffs knew what they were doing. They were exercising their rights under the First Amendment of the U.S. Constitution. East Frank's counterclaims consist of nothing more than attempts to stifle speech, to retaliate against Plaintiffs for daring to exercise their rights and to vindicate having been made marketing agents for East Frank's activities against their will. The Counterclaims should be dismissed.

## II. ARGUMENT COMPELLING DISMISSAL OF EAST FRANK'S COUNTERCLAIMS

### A. East Frank's Counterclaims Are Permissive and May Be Dismissed for Lack of Subject Matter Jurisdiction

Defendant concedes that the Court should dismiss its counterclaims against Plaintiffs if Plaintiffs' Lanham Act claims had not been asserted against it or were to be dismissed from this action. [Doc. 28, fn. 1]. Defendant's only thread connecting its defamation and other claims to federal court jurisdiction is that its claims are "so related to claims in the action" that the Court may exercise jurisdiction over Defendant's claims pursuant to Article III of the U.S. Constitution and 28 U.S.C. § 1367(a).

Defendant's counterclaims are not, however, related to Plaintiffs' claims against Defendant. Plaintiffs' claims, asserting false association and false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), respectively, and unfair and deceptive trade practices under N.C.G.S. § 75-1.1, arise out of *Defendant's* false and misleading manipulation of photographs of Plaintiffs to make Plaintiffs the unpaid sponsors and advocates of Defendant's business practices that Plaintiffs had protested. Plaintiffs' claims point to the unlawfulness of Defendant's conduct. Defendant, in retaliation for Plaintiffs' taking offense to having their images used to promote Defendant's business practices, now has sought to chill Plaintiffs' speech by asserting that Plaintiffs have defamed them. Plaintiffs' speech is unrelated to Defendant's photo-manipulation activities, and these counterclaims only attempt to create some sort of leverage and chill protestors' speech that Defendant does not like. Put another way, there are no overlapping claims or elements among Plaintiffs' claims and Defendant's counterclaims. Regardless of who prevails on the merits of Plaintiffs' Lanham Act claims, that outcome will have no bearing on any of the elements of Defendant's defamation and other claims. If

Defendant's claims survive, the parties will be trying two separate cases: one that asks if Defendant's photo-manipulation violates federal and state law, and the other that asks if the content of Plaintiffs' speech defamed the restaurant.

Defendant's defamation and other counterclaims do not "derive from a common nucleus of operative fact" as Plaintiffs' claims against Defendant for false advertising and false association or sponsorship, and the parties would not "ordinarily be expected to try them all in one judicial proceeding," such that the Court should decline to exercise subject matter jurisdiction over the counterclaims and it should dismiss them. *See Nouveon Tech. Pas., Inc. v. McClure,* 2013 WL 811102, at *2 (W.D.N.C. Mar. 5, 2013).

### B. Plaintiffs Toms, Eliza Ball and Chabot Should Be Dismissed Due to the Absence of any Specific Conduct Attributed to Them

Ted Toms, Eliza Ball and Sofia Chabot should be dismissed from the counterclaims because Defendant still has not attributed any specific conduct to any of the three of them. Defendant quotes Paragraph 12 of its counterclaims, which alleges that "each of the Plaintiffs" has held "signs that state 'GROOMING EVENT HERE TODAY,' 'THIS IS CHILD ABUSE,' STOP GROOMING CHILDREN,' 'WHY DO DRAG QUEENS WANT AN AUDIENCE OF CHILDREN,' and 'STOP SEXUALIZING CHILDREN.'"

Which of the signs did Plaintiff Toms hold? Which of the signs did Plaintiff Eliza Ball hold? Which of the signs did Plaintiff Chabot hold? East Frank does not say. The exhibits to the Complaint and to the counterclaims do not show that each of these three Plaintiffs held all such signs. In fact, the exhibits contradict such an allegation. Nobody is shown holding all these signs.

Defendant utterly fails to connect any of these three Plaintiffs to any particular speech, except to allege generally that they all held all such signs. Defendant's claims against Defendants Toms, Eliza Ball and Chabot are not plausible on their face and are unsupported by the exhibits

3

Case 3:23-cv-00867-RJC-DCK   Document 32   Filed 07/05/24   Page 3 of 13

of record in the pleadings of this action. Defendants' counterclaims lack any specificity with respect to these Plaintiffs, and as "replete with claims that appear to be generic or superfluous, with a complete lack of any specificity." *Davis v. Brock & Scott LLC*, 2023 WL 9546903, at *4, Case No. 3:23-cv-492 KDB-DCK (W.D.N.C., Dec. 28, 2023). "Such haphazard pleading suggests this Complaint follows a 'shotgun approach' that the court disfavors." *Id*. (*citing Parks v. Boston Scientific Corp.*, 2018 WL 1040103, at *1 (W.D.N.C., Feb. 03, 2018) (*citing Holland v. Wells Fargo Home Mortgage*, 2015 WL 1432458 at *1 (W.D.N.C. Feb. 13, 2015)) ("A form complaint 'customized to add the particulars' is 'ineffective' and makes it more difficult for those with actual claims to have their day in court.").

Plaintiffs Toms, Eliza Ball and Chabot should be dismissed from the counterclaims summarily due to Defendant's utter failure to allege any "plausible" specific conduct by any of them that could form the basis for any cause of action asserted against them.

### C. East Frank's Defamation Claims Against Plaintiffs Must Be Dismissed

**1.** ***Defendant's proposed definitions of "grooming" and "sexualizing" prove Plaintiffs' assertion that Defendant's pleading demonstrates that the alleged defamatory statements were <u>actually true</u>.***

Defendant's definitions of "grooming" and "sexualizing" actually support – not contradict – the truth of Plaintiffs' statements about Defendant's restaurant and its activities. To begin, Defendant takes issue with Plaintiffs' definition of "grooming" as the act of attempting to indoctrinate an individual into believing that biological sex is a fluid concept, opting instead for the proposition that "'[g]rooming refers to deliberate actions taken by a [person] to expose a child to sexual material.'" [Doc. 28, at 17]. That is fine. And then Defendant assumes that Plaintiffs' definition of "sexualizing" – as the act of making others see someone or something in sexual terms

4

– is correct, but then also offers its own definition as "to make sexual; endow with a sexual character or cast." [Doc. 28, at 17]. Again, that is fine.

Even using Defendant's definitions of "grooming" and "sexualizing," since Defendant admits in its pleading that it holds drag shows and that it is open for family attendance, including children, [Doc. 18, ¶¶ 1, 7-8, 10, 18], alleged statements by Plaintiffs that Defendant engages in grooming and sexualizing children are simply true and, therefore, cannot be defamatory. *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21, 68-69 (2020) (finding that a statement is not defamatory if it is substantially true). That is so because Defendant's own words from the allegations in its pleading are that it takes deliberate actions (*i.e.*, "on occasion, [it] hosts drag shows") that expose children (*i.e.*, "all-age drag shows [are] drag performance[s] that occur[] at a venue [like Defendant's restaurant] with no customer age restriction") to sexual material with a sexual character (*i.e.,* "[drag show] practitioners challenge traditional gender norms, often by assuming a hyper-stylized persona with exaggerative feminine or masculine features—an intentionally over-the-top character that the drag performer uses 'to subvert and celebrate gender expressions.'").

Thus, while the issue of whether an alleged defamatory statement is actually true is generally a question of fact to be tested in discovery and, if necessary, proven at trial, where, as here, the claimant's pleading demonstrates on its face that the statement is actually true, courts must dismiss the defamation claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Taube v. Hooper*, 270 N.C. App. 604, 612 (2020) ("Where plaintiff's own pleadings establish the truth of an allegedly defamatory statement, dismissal per Rule 12(b)(6) is proper.").

## 2. In the alternative, Defendant's characterization of Plaintiffs' alleged defamatory statements as statements alleging immorality only demonstrates that those statements are too loose, figurative, or hyperbolic to constitute defamation, especially when viewed as statements of protest on an issue of public interest.

If the defamation claims are not dismissed on the ground that Defendant's own pleadings establish the truth of Plaintiffs' allegedly defamatory statements, then, in the alternative, the claims should be dismissed because they are too "loose, figurative, or hyperbolic" to constitute defamation, especially when viewed in "full context" as expressions of protest on an issue of growing public concern. *See Desmond v. News & Observer Pub. Co.*, 241 N.C. App. 10, 17 (2015). Indeed, by characterizing the Plaintiffs' alleged statements as "misdirected, hate fueled, and Quixotesque crusade," [Doc. 28, at 17], Defendant essentially acknowledges that Plaintiffs' alleged statements were loose, figurative, or hyperbolic.

The alleged statements show that Plaintiffs obviously were very upset and angry over Defendant's treatment of children at its restaurant. Plaintiffs' emotional messaging that, at times, hearkened to biblical themes ("Sodom and Gomorrah"), demons ("demonic, child grooming activity") and war ("war on our children"), [Doc. 18, ¶ 11], is indicative of the loose, figurative, and hyperbolic nature of the alleged statements that a reasonable listener or reader would not take literally. "Although someone cannot preface an otherwise defamatory statement with 'in my opinion' and claim immunity from liability . . . [r]hetorical hyperbole, in contrast, might appear to make an assertion, but a reasonable reader or listener would not construe that assertion seriously." *Craven v. Cope*, 188 N.C. App. 814, 817 (2008) (quoting *Daniels v. Metro Magazine Holding Co., L.L.C.*, 179 N.C. App. 533, 539-40 (2006)). Indeed, Defendant itself concedes the hyperbolic nature of Plaintiffs' statements, when Defendant states that Plaintiffs' alleged statements were "grossly out of touch with reality." [Doc. 28, at 17].

Additionally, in North Carolina, the issue of grooming and sexualizing children is a matter of growing public concern, as evidenced by the General Assembly's enactment last year of Session Law 2023-106, which is commonly known as the "Parents' Bill of Rights." As a result of the enactment of the Parents' Bill of Rights, in North Carolina's public schools, instruction on gender identity, sexual activity, or sexuality is now prohibited from being included in the curriculum provided in grades kindergarten through fourth grade. G.S. § 115C-76.55. These include children of the same ages that Defendant permits to attend its subversive drag show performances. "[D]ebate on public issues should be uninhibited, robust, and wide-open, and . . . it may well include vehement, caustic, and sometimes unpleasantly sharp attacks. . . ." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). At most, Plaintiffs were engaging in caustic speech that is best characterized as rhetorical hyperbole on an issue of public concern, and, as such, the defamation claims alternatively should be dismissed on that ground.

> **3.** *Defendant failed to address that since only persons, and not businesses, can be prosecuted for child abuse, Plaintiffs' alleged statements could not be said to have accused Defendant, a restaurant-operating company, of committing a crime of moral turpitude.*

Defendant argues that it has stated a claim for defamation *per se* because Plaintiffs accused Defendant, a company that operates a restaurant, of committing a crime of moral turpitude, *i.e.*, child abuse. [Doc. 28, at 18-19]. However, in North Carolina, the crime of child abuse is one that can only be committed by an individual – namely, a parent or any other person providing care to or supervision of a child less than 16 years of age. *See* G.S. §§ 14-318.2 (misdemeanor), 14-318.4 (felony). Indeed, in *Dobson v. Harris*, 352 N.C. 77 (2000), the case from which Defendant quoted for support of its view that Defendant – a company that operates a restaurant -- could have committed child abuse, [Doc. 28, at 19], the Supreme Court reviewed an allegation by a mother that she had been defamed by a store employee. Thus, Plaintiffs could not have accused Defendant

of the crime of child abuse because Defendant, as a corporate entity, is incapable of committing the crime of child abuse.

Moreover, Defendant did not even attempt to address that it only alleges one such statement that appeared on a sign or signs held by an unnamed Plaintiff or Plaintiffs in front of Monroe City Hall or on the sidewalk outside of Defendant's restaurant reading "THIS IS CHILD ABUSE." Aside from not alleging which, if any, of the Plaintiffs held such a sign and whether such a sign was held outside of Defendant's restaurant or held someplace else, the statement on the sign does not describe the "This" in "This is Child Abuse." Rather, Defendant concedes that the sign requires an explanation that "Plaintiffs intended these signs to refer to East Frank and individuals seeing these signs at such times and locations understood them to be referring to East Frank." [Doc. 18, Counterclaims, ¶ 12]. Yet, claims for defamation *per se* are only established "when considered alone without innuendo or explanation." *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 583 (2002); *see Farmer v. Lowe's Companies, Inc.*, 188 F. Supp. 2d 612, 615 (W.D.N.C. 2001) ("The North Carolina courts have defined libel *per se* as a publication which, when considered alone without explanatory circumstances ….").

> **4.** *Defendant made no independent argument as to how Plaintiffs impeached Defendant in its trade, business or profession, and Defendant failed to explain how Plaintiffs' alleged statements could be derogatory to Defendant's character when Defendant is proud of its drag shows.*

With respect to whether Defendant has stated a claim for defamation *per se* on the basis of Plaintiffs having made an accusation that impeached Defendant in its trade, business, or profession, Defendant attempts to bootstrap its "crime of moral turpitude" argument. Using circular reasoning, Defendant argues that because Plaintiffs accused Defendant of criminal conduct, Plaintiffs impeached Defendant in its business or trade. [Doc. 28, at 19]. Even if

Defendant permissibly could bootstrap its prior argument to satisfy this category of defamation *per se*, Defendant fails because, as described above, Defendant, as a corporate entity, cannot commit the crime of child abuse.

Moreover, Defendant made no attempt to distinguish *Badame v. Lampke*, 242 N.C. 755, 757 (1955), in which the supreme court stated, "Defamation of this class ordinarily includes charges made by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct in business." Furthermore, Defendant made no attempt to explain how Plaintiffs could be said to have imputed to Defendant conduct that is "derogatory to [its] character and standing as a business and tending to prejudice [it] in [its] business," *Badame*, 242 N.C. at 757, when Defendant takes the position throughout its pleading that it takes pride in its drag shows, noting that they are a "subcultural phenomenon." [Doc. 18, ¶ 8]. Since Defendant is proud of its all-age drag shows, which it considers a "phenomenon," it cannot contend that alleged statements about those shows are "derogatory to [its] character and standing as a business and tending to prejudice [it] in [its] business."

### 5. *All of Defendant's alleged damages are, by their nature, too speculative for Defendant's claims to survive Plaintiffs' motion to dismiss.*

Defendant's defamation *per quod* claim and the rest of its claims rely upon an allegation of damages that are, by their nature, too speculative – even at the pleading stage of the litigation. While, in response to this Motion, it was given the opportunity to describe its damages in more detail, Defendant could not do so, saying only that its damages are "the profits it would have obtained from the families that Metzger proudly claimed to have stopped from entering East Frank on or around October 1, 2023." [Doc. 28, at 20]. Not only does Defendant now assert that its alleged damages relate solely to conduct committed by only one of the Plaintiffs, which is enough to dismiss all Defendant's claims against all other Plaintiffs, Defendant's alleged damages asserted

against that one Plaintiff are "so speculative as to require that its suit be dismissed at this stage." *Carolina Wire & Cable, Inc. v. Finnican*, 46 N.C. App. 87, 90-91 (1980); *Kitchen Lumber Co. v. Tallassee Power Co.*, 206 N.C. 515, 431 (1934) ("Where the profits lost by defendant's tortious conduct proximately and naturally flow from his act, and are reasonably definite and certain, they are recoverable; those which are speculative and contingent are not.").

Defendant's claim to lost profits, including profits it "would have realized from the patronage of the five families," [Doc. 18, ¶ 36], is incredibly speculative and incapable of calculation with reasonable certainty, as required, under any circumstances. How will Defendant ever be able to ascertain the identities of the five families, let alone calculate the patronage by those families that Defendant asserts it lost due to Plaintiffs' alleged statements? How will Defendant ever know what those five families would have ordered to eat and/or drink, if anything? How will Defendant establish that those five families, if they had entered the restaurant and noted the advertisement of drag show events inside, would not have left the restaurant anyway? If Defendant truly was harmed financially by Plaintiffs, then Defendant would have alleged a more substantive basis for damages. The fact that it did not do so is glaring.

**D. East Frank's UDTPA Claim Must Be Dismissed Because Plaintiffs' Exercise of Their First Amendment Rights Cannot Constitute "Trade Practices" to Support a Violation of the Act**

Plaintiffs engaged in First Amendment protected speech activities, not "business activities." Plaintiffs have not been alleged to have been engaged in any "trade practices" that possibly could give rise to a N.C.G.S. § 75-1.1 claim. As noted, the term "commerce" in the UDTPA is defined as "all business activities, however denominated," other than certain professional services. N.C. Gen. Stat. § 75–1.1(b). "Courts have viewed the rights of businesses to sue other businesses for violations of the UD[T]PA with a much more skeptical eye." *Exclaim*

*Mktg., LLC v. DirecTV, LLC*, 134 F.Supp.3d 1011, 1020 (E.D.N.C. 2015). *see also F. Ray Moore Oil Co. v. State*, 80 N.C. App. 139, 142 (1986) ("The statute is aimed at unfair and deceptive practice by those engaged in business for profit."). Here, Plaintiffs engaged in speech, not "business for profit." The UDTPA does not apply to the conduct alleged by Defendant. Should the Court allow Defendant's UDTPA to survive dismissal, the Court would be allowing businesses with hurt feelings over citizens' speech to impose a chill over those citizens' speech by threatening unfair trade practices litigation. The Court should dismiss Defendant's UDTPA claim.

### E. Defendant's Civil Conspiracy Claim Fails for Lack of any Underlying Crime or Tort, and Due to the Chilling Effect on Speech that Allowance of This Claim Would Have

Defendant does not attempt to argue that its civil conspiracy claim should survive against Plaintiffs when its other claims fall for failing to state a claim upon which relief may be granted. The civil conspiracy claim is dependent upon Defendant's defamation claim succeeding. As the defamation claim should be dismissed, so should the civil conspiracy claim.

The other, equally important reason that the civil conspiracy claim should be dismissed is because of the chilling effect that survival of this claim would have on speech. By Defendant's logic, any time a group of citizens "agrees among themselves" to protest a business whose practices they oppose, and then take acts in furtherance of that "agreement," including, as Defendant states, by engaging in "protests," the citizens should be held liable for civil conspiracy. Defendant would turn those protesting Monsanto's use of genetically-modified organisms, or those opposed to Planned Parenthood's abortion practices, or those urging corporations or universities to divest from South Africa, or Israel, or Palestine, into civil conspirators, not exercisers of closely-held Constitutional rights.

Defendant's civil conspiracy claim should be dismissed, whether because of the dismissal of the underlying defamation claims, or because of the dangerous precedent that would be set by allowing this claim to be asserted against those exercising their Constitutional rights.

### III. CONCLUSION AND PRAYER FOR RELIEF

Plaintiffs respectfully submit that Defendant's counterclaims should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim.

Dated: July 5, 2024

s/ Megan E. Sneed
Jason M. Sneed (N.C. Bar No. 29593)
Megan E. Sneed (N.C. Bar No. 38525)
**SNEED PLLC**
445 S. Main St., Suite 400
Davidson, NC 28036
Tel.: 844-763-3347
JSneed@SneedLegal.com
MSneed@SneedLegal.com
Litigation@SneedLegal.com


s/ Jonathan A. Vogel
Jonathan A. Vogel (N.C. Bar No. 34266)
**VOGEL LAW FIRM PLLC**
6000 Fairview Road
South Park Towers, Suite 1200
Charlotte, NC 28210
Tel.: 704.552.3750
jonathan.vogel@vogelpllc.com

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 5th day of July, 2024, the foregoing *Plaintiffs' Reply in Support of Their Motion to Dismiss Defendant's Counterclaims* was served via electronic means through CM/ECF on the following counsel of record:

Bo Caudill
bocaudill@villmercaudill.com
Sophia M. Pappalardo
spohiapappalardo@villmercaudill.com
VILLMER CAUDILL, PLLC
P.O. Box 18186
Charlotte, NC 28218

*Counsel for Defendant*

                                                s/ Megan E. Sneed
*An Attorney for Plaintiffs*