IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-867-UJ1-DCK

| | |
|---|---|
| MICHELLE BALL, JESSICA MULLEN, ELIZA BALL, LISA METZGER, AMELIA BALL, SOFIA CHABOT, and TED TOMS, <br><br> Plaintiffs, <br><br> v. <br><br> EAST FRANKLIN SUPERETTE AND KITCHEN LLC, <br><br> Defendant. | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion To Dismiss Amended Complaint" (Document No. 17) and "Plaintiffs' Motion To Dismiss Defendant's Counterclaims" (Document No. 25). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that Defendant's motion be <u>granted</u> in part and that the motions to dismiss otherwise be <u>denied</u> without prejudice.

## I. BACKGROUND

Michelle Ball, Ted Toms, Sofia Chabot, Amelia Ball, Eliza Ball, Jessica Mullen, and Lisa Metzger (together, "Plaintiffs") initiated this action with the filing of a "Complaint" (Document No. 1) on December 18, 2023. Plaintiffs filed a "First Amended Complaint" (Document No. 13) (the "Amended Complaint") on March 8, 2024.

The crux of Plaintiffs' lawsuit is that Defendant obtained photographs "of Plaintiffs and other individuals residing in Union County" and without authorization created modified versions of the photos and "used those modified versions repeatedly to advertise and promote Defendant's East Frank restaurant, retail, and entertainment services." (Document No. 13, pp. 1-3); see also (Document No. 13, pp. 9-12, 15-16, 18). Based on Defendant's alleged conduct, the First Amended Complaint asserts claims for: (1) Violations Of 15 U.S.C. § 1125(a)(1)(A) (§ 43(a)(1)(A) of the Lanham Act) – False Association, Sponsorship, Approval; (2) Violations Of 15 U.S.C. § 1125(a)(1)(B) (§ 43(a)(1)(B) of the Lanham Act) – False Advertising; (3) Privacy-Based Tort Of "Wrongful Appropriation Of Personal Image"; and (4) Violation Of North Carolina Unfair And Deceptive Trade Practices Act (N.C.Gen.Stat. §§ 75-1.1, *et seq*.). Id. at pp. 19-24.

"Defendant's Motion To Dismiss Amended Complaint" (Document No. 17) was filed on April 12, 2024. Defendant argues, *inter alia*, that "Plaintiffs lack statutory standing to assert claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." (Document No. 17, p. 1). Defendant requests that if "the Court grants Defendant's motion as to the Lanham Act claim[s] but not the state law claims," then the Court should decline to exercise supplemental jurisdiction over the state law claims. (Document No. 17, p. 2) (citing 28 U.S.C. § 1367(c)(3)).

Also on April 12, 2024, Defendant filed its "Answer And Counterclaims" (Document No. 18). Defendant contends that Plaintiffs have made "knowingly false accusations" against it that include accusations of "child abuse, child sexual exploitation, and child grooming." (Document No. 18, p. 8). Defendant asserts counterclaims for: (1) Defamation *Per Se*; (2) Defamation *Per Quod*; (3) Unfair And Deceptive Trade Practices; and (4) Civil Conspiracy. (Document No. 18, pp. 19-22). Defendant asserts that this Court may exercise jurisdiction over the subject matter of this action because the counterclaims "are so related to the claims in the action over which the

2

Court has original jurisdiction (i.e., the Lanham Act claim[s]) that they form a part of the same case or controversy." (Document No. 18, p. 8).

"Plaintiffs' Motion To Dismiss Defendant's Counterclaims" (Document No. 25) was filed on May 23, 2024. Plaintiffs contend that "Defendant's counterclaims should be dismissed entirely for lack of subject matter jurisdiction, as they are permissive counterclaims that do not arise out of the Lanham Act violations asserted by Plaintiffs against Defendant but rather require an independent basis of federal jurisdiction over those claims, which are solely based on state law." (Document No. 25, p. 1).

The pending motions to dismiss (Document Nos. 17 and 25) have been fully briefed and are ripe for review and a recommended disposition to the presiding District Judge.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**A. "Defendant's Motion To Dismiss Amended Complaint"**

Defendant East Franklin Superette and Kitchen, LLC seeks dismissal of Plaintiffs' First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Document No. 17, p. 1). Defendant asserts that:

> 1. Plaintiffs lack statutory standing to assert claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);
>
> 2. Plaintiffs fail to allege one or more necessary elements of Lanham Act claims; and
>
> 3. The conduct of which Plaintiffs complain is protected First Amendment expression.

Id.

4

Case 3:23-cv-00867-TEJ-DCK    Document 33    Filed 04/10/25    Page 4 of 14

As noted above, Defendant suggests that if the Court finds that Plaintiffs' § 43(a) claims should be dismissed, "but concludes that Plaintiffs have stated viable state law claims, then the Court should nevertheless decline to exercise supplemental jurisdiction over the remaining claims." (Document No. 17-1, p. 24) (citations omitted).

Defendant's first and most compelling argument for dismissal of the Amended Complaint is that Plaintiffs lack statutory standing to bring claims under the Lanham Act (the "Act") because such claims "fall outside the Act's Zone of Interests.'" (Document No. 17-1, pp. 5-11). Defendant contends that "Plaintiffs must have a commercial injury to have statutory standing under the Act." (Document No. 17-1, p. 5) (citing Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131-32 (2014)).

Defendant notes that Lexmark was a case involving a false advertising claim under § 43(a)(1)(B) of the Lanham Act, and that in that decision the Supreme Court reaffirmed "that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by [the law invoked].'" (Document No. 17-1, p. 5) (quoting Lexmark, 572 U.S. at 129) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). "Identifying the interests protected by the Lanham Act, however, requires no guesswork, since the Act includes an 'unusual, and extraordinarily helpful,' detailed statement of the statute's purposes." Lexmark, 572 U.S. at 131.

Defendant then notes that Section 45 of the Act "describes Congress's intent to achieve five purposes" but that "*Lexmark* implicated only one §45 purpose: 'to protect persons engaged in [commerce within the control of Congress] against unfair competition.'" (Document No. 17-1, p. 6) (quoting Lexmark, 572 U.S. at 131). Defendant further notes that the Lexmark decision concluded "that a § 43(a)(1)(B) plaintiff 'must allege an injury to a commercial interest in reputation or sales' to come within the Act's zone of interest and thus have statutory standing."

5

Id. Based on Lexmark, Defendant argues that Plaintiffs' § 43(a)(1)(B) false advertising claim is barred because "Plaintiffs allege no injury to any commercial interest." Id.

Next, Defendant argues that "*Lexmark's* analytical framework applies with equal force" to Plaintiffs' § 43(a)(1)(A) claim. (Document No. 17-1, p. 7). Defendant states that:

> since *Lexmark*, "numerous federal courts, including . . . the Fourth Circuit, have applied *Lexmark's* standing requirement to claims for false association," *Geiger v. Abarca Family, Inc.*, 2022 U.S. Dist. LEXIS 167087 *19 n.6 (E.D. Va. July 29, 2022) (citing *Belmora, LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 710-12 (4th Cir. 2016). That is, to have standing, Plaintiffs' interests must correspond with one or more of the purposes set forth in § 45.

(Document No. 17-1, p. 7).

Defendant then argues that only two of the § 45 purposes could apply here, and both focus on commercial interests. Id. (citing 15 U.S.C. § 1127). "They are, first, 'to protect persons engaged in [commerce within the control of Congress] from unfair competition,' . . . and, second, 'to regulate commerce within the control of Congress by making actionable the deceptive and misleading use *of marks* in such commerce.'" Id. (citing 15 U.S.C. § 1127). Defendant argues that to assert a claim under § 43(a)(1)(A) based on misappropriation of likeness, Plaintiffs "must allege that they have made prior commercial use of their likeness or that they have a bona fide present intent to commercialize their likeness." (Document No. 17-1, p. 8) (citations omitted).

Defendant further argues that Plaintiffs have "alleged no present commercial interest in their likeness" and that the Amended Complaint only indicates that Plaintiffs "live in Union County," North Carolina, and "that they protest East Frank's drag shows." (Document No. 17-1, p. 9) (citing Document No. 13, ¶¶ 17, 31, and 48); see also (Document No. 13, ¶ 11). As such, Defendant contends that "Plaintiffs failed to plead a *commercial* injury and lack standing to sue under the Act." Id. Moreover, according to Defendant, the failure to allege "the

6

commercialization of Plaintiffs' likenesses distinguishes this case from those in which courts have permitted false association claims to proceed." (Document No. 17-1, p. 10) (citing Valencia v. Midnite Rodeo, LLC, 3:22-CV-665-RJC-DCK, 2023) WL 7031561 at *1 (W.D.N.C. Sept. 13, 2023) (denying Rule 12(b)(6) motion to dismiss § 43(a)(1)(A) false association claim where "Plaintiffs contend[ed] that they [were] each 'well-known professional model[s] who earn[] [their] livelihood[s] modeling and licensing [their] images to companies, magazines, and individuals for the purpose of advertising products and services'") and Geiger v. Abarca Family, Inc., 2022 WL 424838 at *8 (E.D.Va. July 29, 2022) (denying Rule 12(b)(6) motion to dismiss § 43(a)(1)(A) false association claim where plaintiffs, a group of professional models, alleged a strip club's "unauthorized use of their images in its advertising creates the false impression that Plaintiffs are associated with or endorse the Club which 'substantially injures their careers,' . . . and 'deprives them of income they are owed related to the commercialization of their images.'")).

Defendant asserts that "[u]nlike the plaintiffs in *Valencia* and *Geiger*, the instant Plaintiffs failed to allege any fact that would permit the conclusion that Plaintiffs' extant or non-speculative future business or commercial interests were injured by the Posts—Plaintiffs have not even told us what business they are in, let alone how the Posts affect that business." Id. Defendant concludes that because there is no alleged commercial injury, Plaintiffs' claims do not fall within the Act's zone of interests; and therefore, Plaintiffs lack standing to bring their § 43 claims. (Document No. 17-1, p. 11).

In response, Plaintiffs contend that they have properly stated claims under §§ 43(a)(1)(A) and (B) of the Lanham Act. (Document No. 21, pp. 4-9, 16-19).

First, regarding their claim under § 43(a)(1)(A) for false association, sponsorship, and/or approval, Plaintiffs assert that they "repeatedly articulate the false facts or devices published by

7

Case 3:23-cv-00867-TEJ-DCK    Document 33    Filed 04/10/25    Page 7 of 14

Defendant in Defendant's commercial advertising and promotional activities, namely, Defendant's social media and other advertising using modified versions of Plaintiffs' June 13 Group Photo, the October 10 Group Photo, the Mullen/Metzger Photo, the Chabot/Metzger Photo, and the Metzger Photo." (Document No. 21, p. 5) (citing Document No. 13, ¶¶ 58-67). Plaintiffs further note that they have pled that "Defendant *has used in commerce*, inter alia, misdescriptions of fact regarding Plaintiffs' approval or endorsement of Defendant's business and services." Id. (citing Document No. 13, ¶¶ 62 and 71).

Plaintiffs contend that "[a] straightforward reading of the Lanham Act reveals that the only 'commercial activities' referenced by Congress in Section 43(a) are the commercial activities of the Defendant accused of a violation." Id. Plaintiffs argue that Defendant "operates a restaurant in downtown Monroe, North Carolina" and that it "hijacked and published photos of Plaintiffs to promote its goods such as 'BURGERS' and its entertainment services such as 'Tomorrow Drag Brunch.'" (Document No. 21, p. 6) (citing Document No. 13, ¶¶ 2, 3, 20, 31, 33, and 48). As such, Plaintiffs argue "the acts accused to be in violation of the Act" must be commercial activities, but the Act "does not require the injured party to be acting in commerce." Id.

Plaintiffs contend that the argument that they cannot bring a § 43(a)(1)(A) claim "without having 'made commercial use of their likeness or that they have a bona fide present intent to commercialize their likeness'" is a "minority view." (Document No. 21, p. 7). In support of the argument that Defendant is relying on a minority view of relevant caselaw, Plaintiffs only cite an unpublished decision from the Pennsylvania. (Document No. 21, pp. 8-9) (quoting Fanelle v. Lojack Corp., 2000 WL 1801270, at *10–11 (E.D.Pa. Dec. 7, 2000)).

Next, regarding their claim under § 43(a)(1)(A) for false advertising, Plaintiffs assert that they have adequately pled the necessary elements for a Lanham Act false advertising claim:

8

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

(Document No. 21, p. 16) (citing Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir. 2002) and 15 U.S.C. § 1125(a)(1)(B).

Plaintiffs contend that "when Defendant[] hijack[s] Plaintiffs' images and likeness, manipulate[s] those photos and post[s] them to advertise Defendant's own restaurant products and entertainment services, Defendant[] make[s] Plaintiffs their unpaid models or props while depriving them of just compensation for doing so." (Document No. 21, p. 17).

Plaintiffs then address the application of Lexmark to this case. (Document No. 21, pp. 17-19). Plaintiffs acknowledge that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales" and "secondarily, a plaintiff's injury must be 'proximately caused by violations of the statute.'" (Document No. 21, p. 17) (quoting Lexmark, 572 U.S. at 131-32). Plaintiffs further acknowledge that "when a plaintiff and defendant in a Lanham Act false advertising case are not direct competitors, to have standing, 'a plaintiff [simply] must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations.'" (Document No. 21, p. 18) (quoting Lexmark, 572 U.S. at 140).

Plaintiffs conclude that Defendant's use of Plaintiffs' images and likenesses in commerce to promote its own goods and services, deprived "Plaintiffs of the revenues due to them for the commercialization of their images and likenesses." (Document No. 21, p. 19). Plaintiffs contend

that Defendant's "misuse of their images and likenesses . . . impairs the ability of Plaintiff's to commercialize their rights by associating them with causes and activities they have publicly opposed." Id.

"Defendant East Frank's Reply…" first argues that Plaintiffs' application of the Lanham Act asks the Court "to disregard context and read section 43(a) in isolation, as if no other part of the Act matters." (Document No. 24, p. 2). Defendant argues that "Plaintiffs' approach does not just defy basic tenets of statutory construction, but also *Lexmark's* specific holding." Id. Defendant asserts that Lexmark "made clear" that "standing under the Lanham Act does not turn solely on whether a plaintiff can allege the barebone elements of a section 43(a) claim; rather, to have standing, a plaintiff must show that they fall within the zone of interests enumerated in section 45." Id. (citing Lexmark, 572 U.S. at 131-32).

Next, Defendant argues that the Court should "focus simply on whether a person alleges that they have previously commercialized their name, image, or likeness, or that they have a present intent to do so, such that they can plausibly allege a 'distinctive mark' and 'likelihood of confusion' in the marketplace." (Document No. 24, pp. 3-4). Defendants asserts that "[i]nstead of alleging or attempting to allege any cognizable commercial interest in their image or likeness, Plaintiffs insist that *anyone* whose image is misappropriated in interstate commerce has a claim under the Act." (Document No. 24, p. 5). Defendant suggests that Plaintiffs' reliance on Fanelle for their position is misplaced – "*Fanelle* did not involve any section 43(a) claim and therefore had no occasion to analyze section 43(a), section 45, the Lanham Act's zone of interests, or any question of statutory standing." Id. Moreover, Defendant notes that Fanelle is an unpublished decision that predated Lexmark by 24 years. Id.

10

Defendant also argues that Plaintiffs' position is flawed because they have not adequately alleged an "injury to a commercial interest in reputation or sales." (Document No. 24, p. 6) (quoting Lexmark, 572 U.S. at 131-32). Defendant notes that:

> In *Lexmark*, the plaintiff satisfied that requirement by alleging that it lost sales and suffered damage to its business reputation when the defendant misrepresented the legality of reselling its toner cartridges. *Id.* at 123. In *Midnite Rodeo*, the plaintiffs satisfied that requirement by alleging that they were each "models, actresses, and/or social media influencers," *Midnite Rodeo*, 2023 U.S. Dist. LEXIS 195219 at *22, who alleged that "the improper unauthorized use of their Images at issue in this case [] substantially injured their respective careers and reputations," id. at *27 (emphasis added).

(Document No. 24, p. 6).

Here, Plaintiffs "make no similar allegations" and have failed to "allege the nature of their business, if any, or their work, if any, or their careers, if any, or even their recognition in the community, if any." Id. Because they have not plausibly alleged any injury to a commercial interest, Defendant concludes that Plaintiffs lack standing.

The undersigned finds Defendant's arguments regarding Plaintiffs' lack of standing to bring Lanham Act claims (Counts I and II) to be most compelling. In short, the undersigned is persuaded that while Plaintiffs likely have viable state law claims based on the alleged underlying events of this case, their attempt to allege wrongdoing under federal statute, namely, the Lanham Act, is misplaced. As Defendant argues, this case does not seem to fit the purpose, or "zone of interests," of the Lanham Act as interpreted by the Supreme Court in Lexmark.

The undersigned finds that Defendant's application of Lexmark here is proper and that this Court, among others within the Fourth Circuit, have adopted its holding. For example: Davalos v. GGC-Baltimore, LLC, 2025 WL 266673 at *4 (D.Md. Jan. 22, 2025) (plaintiff models adequately alleged that defendant's misuse of their images for promotional and marketing

11

purposes "caused reputational harm and therefore, negatively impacts their business opportunities and fees they can successfully charge"); Moreland v. Pal of Mine Corp., 2024 WL 3937267 at *4-5 (E.D.Va. Aug. 26, 2024) (plaintiff models alleged plausible claims for false advertising and false association under Lanham Act where defendant club used their images without compensating them and created the false impression they were affiliated with the club); Nobriga, v. La Kumbala Lounge & Restaurant, Inc., 2024 WL 2951753 (E.D.N.C. May 23, 2024) (plaintiff models well-pleaded allegations regarding false advertising and false association showed "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising" and supported the recovery of damages under the Lanham Act); Geiger v. Abarca Family, Inc., 2022 WL 4242838 (E.D.Va. July 29, 2022) (Plaintiff models adequately alleged that defendants' unauthorized use of their images injured their commercial interest in reputation and sales); Church Ekklasia Sozo Inc. v. CVS Health Corp., No. 3:20-CV-382-RJC-DSC, 2022 WL 1572732, at *8 (W.D.N.C. Feb. 25, 2022) (plaintiff "Doe clearly lacks standing, as she has not alleged any 'injury to a commercial interest in reputation or sales.'"); Ullah v. Linkenauger, 2020 WL 9459338, at *6 (E.D.Va. Oct. 2, 2020) (Plaintiff adequately alleged Lanham Act false association claim where "Plaintiff has alleged facts from which to draw a reasonable inference that he has sufficiently commercialized his name and image to establish a market presence"); and Hyundai Motor America, Inc. v. Direct Technologies Int'l, Inc., 3:17-CV-MOC-DSC, 2018 WL 4110544 at *3 (W.D.N.C. Aug. 29, 2018) (dismissal of counterclaim for Lanham Act violations denied where defendant adequately alleged "an injury to a commercial interest in reputation or sales" and "economic or reputational injury flowing from the deception wrought by the plaintiffs' advertising")(citation omitted).

Plaintiffs have not identified cases with similar facts to this case where plaintiffs have successfully asserted Lanham Act claims.

Based on the foregoing, the undersigned will recommend that Plaintiffs' Lanham Act claims be dismissed. Since there would then be no remaining federal question in the Amended Complaint or Counterclaims, and noting that all the parties appear to be residents of Union County, North Carolina, the undersigned will further recommend that this Court decline to exercise supplemental jurisdiction over the parties' remaining state law claims and dismiss this action in its entirety.

The undersigned respectfully observes that while both parties may have viable state law claims, this case seems to be a particularly strong candidate for early settlement discussions and resolution by the parties without further court intervention.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion To Dismiss Amended Complaint" (Document No. 17) be **GRANTED** as to Counts I and II brought under the Lanham Act, and **DENIED WITHOUT PREJUDICE** as to Plaintiffs' state law claims.

**IT IS FURTHER RECOMMENDED** that "Plaintiffs' Motion To Dismiss Defendant's Counterclaims" (Document No. 25) be **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that this action be **DISMISSED** in its entirety without prejudice to the parties promptly filing their state law claims in the appropriate North Carolina state court.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: April 10, 2025

David C. Keesler
United States Magistrate Judge