# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

## CHARLOTTE DIVISION


MICHELLE BALL, *et al.*,

          Plaintiffs,

v.                                           CIVIL ACTION NO.   3:23-cv-00867


EAST FRANKLIN SUPERETTE
AND KITCHEN LLC,

          Defendant.


## MEMORANDUM OPINION AND ORDER


Pending before the Court is defendant East Franklin Superette and Kitchen LLC's ("Defendant") Motion to Dismiss the Amended Complaint.   (ECF No. 17.)   Also pending before the Court is Michelle Ball, Ted Toms, Sofia Chabot, Amelia Ball, Eliza Ball, Jessica Mullen, and Lisa Metzger's ("Plaintiffs") Motion to Dismiss Defendant's Counterclaims.   (ECF No. 25.)

These Motions were referred to United States Magistrate Judge David C. Keesler pursuant to 28 U.S.C. § 636(b) for submission of a memorandum and recommendation ("M&R"). Magistrate Judge Keesler filed his M&R on April 10, 2025.   (ECF No. 33.)   In that M&R, he recommends this Court grant in part Defendant's Motion with respect to all Lanham Act claims, deny without prejudice both the entirety of Plaintiffs' Motion and the remainder of Defendant's Motion, decline supplemental jurisdiction over this matter, and dismiss the remainder of this action without prejudice.   (*Id.* at 13.)

1

Plaintiffs timely filed objections to the M&R on April 24, 2025, (ECF No. 34), and Defendant timely responded. (ECF No. 35.) For the reasons that follow, the Court **OVERRULES** Plaintiffs' objections, **ADOPTS** the M&R, and **DISMISSES** this action from the Court's docket.

## I.     BACKGROUND

A recitation of the facts of this action can be found in the Magistrate Judge's M&R, (ECF No. 33 at 1–3), and therefore need not be repeated here. The Court will provide a discussion of any relevant facts as necessary throughout this opinion to resolve Plaintiffs' objections.

## II.     LEGAL STANDARD

### A.  *Review of the Magistrate Judge's M&R*

The Court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to any portion of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Further, this Court need not conduct a *de novo* review of any "general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B.  *Standard for a motion to dismiss*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is a test of the legal and factual sufficiency of a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true,

2

to state a claim to relief that is plausible on its face." *Id.* at 678. When considering the motion, a court must construe the facts and any reasonable inference "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). However, a court need not accept as true legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

A challenge to statutory standing "is [analyzed in] effectively the same [manner] as a . . . failure to state a claim under Rule 12(b)(6)." *Lavigne-Soucie v. Blue Max Trucking, Inc.*, 2023 WL 8603025, at *2 (W.D.N.C. Dec. 12, 2023); *see also CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) ("And typically, '[a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.'" (citing *Baldwin v. University of Pittsburgh Medical Center*, 636 F.3d 69, 73 (3d Cir. 2011))).

### III.    ANALYSIS

Plaintiffs have failed to provide any objection to the Magistrate Judge's recommendation to dismiss their false advertising claim under the Lanham Act (Count I). Nor have they objected to the recommendation to decline supplemental jurisdiction and dismiss without prejudice the remaining state law claims. Plaintiffs' failure to object means there is no obligation to review those recommendations, and this Court **ADOPTS** those recommendations without objection.[1]

---

[1]  Implicitly, the recommendation to decline supplemental jurisdiction is dependent on the fact that there would be "no remaining federal question" if both of Plaintiffs' Lanham Act claims were dismissed. (*See* ECF No. 33 at 13.) If the false association claim remained, then Plaintiffs' objection might be inferred as raising an objection to that recommendation. However, as will be discussed below, the false association claim will be dismissed. Therefore, there is no need to consider that unraised issue.

Plaintiffs do specifically object to the Magistrate Judge's conclusion that they have failed to establish statutory standing for their false association claim. (*See generally* ECF No. 34 at 7–22.) Therefore, the Court will address the arguments related to that.[2]

### A. *Plaintiffs lack statutory standing to bring a Lanham Act false association claim*

i.  <u>Plaintiffs are not "marks" within the meaning of the Lanham Act</u>

Plaintiffs argue that the Magistrate Judge failed to consider that their claim fits within the Lanham Act's purpose of "making actionable the deceptive and misleading use of marks in" Congressionally controlled commerce. (*See* ECF No. 34 at 14.) Plaintiffs then proceed to assume that the pictures of them are "marks" under the Lanham Act. At no point, however, do Plaintiffs explain how these images are marks.

With that assumption, Plaintiffs argue that the Magistrate Judge erred in adopting Defendant's reading of the statute. They claim that there is no commercial interest required for a mark under the Lanham Act. (*See* ECF No. 34 at 11.) Nor, as Plaintiffs claim, is there a need for any word, name, symbol, or device to have been used in commerce in order to be a mark. (*Id.* at 12.) Thus, Plaintiffs believe that any word, name, symbol, or device becomes a mark so long as it "is used by a person." (*See id.*)

Although the Magistrate Judge's analysis focuses primarily on a "commercial injury," a simpler reason explains why Plaintiffs lack statutory standing. Namely, because Plaintiffs' photographs are not "marks" within the meaning of the Lanham Act, they cannot possibly allege an injury within the zone of interest of that Act. Accordingly, Plaintiffs lack statutory standing.

---

[2] At times, Plaintiffs' arguments in support of their objections span across multiple sections of their memoranda. When appropriate, the Court consolidates the arguments into one analysis.

4

Unlike Article III standing, statutory standing "focuses on whether the plaintiff is a member of the class given authority by a statute to bring suit." *CGM, LLC*, 664 F.3d at 52 (citations omitted). By its nature, statutory standing is a question of statutory interpretation, and "where the statut[e's] language provides a clear answer, [the] analysis begins and ends with that language." *Id.* at 52–53 (citing *Wilmington Shipping Co. v. New England Life Insurance Co.*, 496 F.3d 326, 339 (4th Cir. 2007)).

To establish statutory standing under the Lanham Act, a plaintiff's claim must: (1) "fall within the 'zone of interests' protected by the statute"; and (2) show that their injuries are "proximately caused by [a defendant's] violations of the statute." *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 707–08 (4th Cir. 2016) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128, 132 (2014)).

"The scope of the zone of interests is not 'especially demanding,' and the plaintiff receives the 'benefit of any doubt.'" *Id.* at 707 (citing *Lexmark*, 572 U.S. at 130). Identifying the interests of the Lanham Act "requires no guesswork, since the Act includes an unusual, and extraordinarily helpful, detailed statement of the statute's purpose." *Lexmark*, 572 U.S. at 131 (quotation omitted). The statute provides:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127. "[A] typical false-advertising case will implicate only the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'" *Lexmark*, 572 U.S. at 131. However, "[m]ost of the enumerated purposes are relevant to false-association cases." *Id.* That would include Plaintiffs' preferred purpose: "making actionable the deceptive and misleading use of marks in such commerce." 15 U.S.C. § 1127.

This, of course, begs the question: what makes something a "mark" that is protected by the statute? Plaintiffs claim it is "any word, name, symbol, or device, or any combination thereof." (*See* ECF No. 34 at 7 n.1 (citing 15 U.S.C. § 1127).) However, that definition cuts out crucial limiting language in the statute. Under the Lanham Act, the term "mark" means "any trademark, service mark, collective mark, or certification mark." 15 U.S.C. § 1127. Both parties agree that only "trademark" and "service mark" are applicable to this case. (*See* ECF No. 34 at 11.) "[A]ny word, name, symbol, or device, or any combination therefore" is a service mark or trademark if it is "used by a person, or . . . a person has a bona fide intention to use in commerce and applies to register" the mark in the federal register established by the Lanham Act. 15 U.S.C. § 1127. However, trademarks require the word, name, symbol, or device to be used in a manner that "identif[ies] and distinguish[es] his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *Id.* To qualify as a service mark, on the other hand, the mark must be used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." *Id.*

6

Plaintiffs have not established that their images meet either definition. The operative Complaint is devoid of any mention of how Plaintiffs' image and likeness were used to identify or distinguish goods, products, or services from other goods, products, or services. Plaintiffs offer no explanation of how their image and likeness were "used by [them]" to distinguish products, goods, or services. *See* 15 U.S.C. § 1127. Likewise they have not stated if they were intending to do so and applied for a registration of their image and likeness as a trademark or service mark.

Thus, Plaintiffs' argument that any "word, name, symbol, or device . . . need only be 'used by a person'" to become a mark is illogical. (*See* ECF No. 34 at 12.) To be a mark, Plaintiffs had to indicate that they were using their image and likeness for, essentially, brand recognition. They have failed to plead that.

Plaintiffs' reliance on *Belmora* unpersuasive. Plaintiffs believe that they did not need to prove that their marks were commercialized because the Fourth Circuit has held in *Belmora* that the Lanham Act has no "unstated requirement that the plaintiff have first used its own mark . . . in U.S. commerce before a cause of action will lie against a defendant." (*Id.* (citing *Belmora*, 819 F.3d at 708).) That is true. A plaintiff could have used their mark internationally first, as the plaintiff in *Belmora* did. *See Belmora*, 819 F.3d a 702–04. A plaintiff could also have "a bona fide intention to use [the mark] in commerce and appl[y] to register" the mark. 15 U.S.C. § 1127. Plaintiffs have not alleged either.

It is clear Plaintiffs have not transformed their image and likeness into marks protected by the Lanham Act. They cannot, therefore, meet the Lanham Act's zone of interest of protecting against "the deceptive and misleading use of marks in such commerce." 15 U.S.C. § 1127. Accordingly, Plaintiffs lack statutory standing to assert their claims.

7

ii. <u>Objection one: the Magistrate Judge failed to consider the plain language of the Lanham Act, and erred by concluding that Plaintiffs needed to plead a commercial injury</u>

Because their image and likeness are not marks within the meaning of the Lanham Act, Plaintiffs fail to establish statutory standing. Even if, however, they were to plausibly allege their image and likeness were marks, Plaintiffs would still lack statutory standing. That is because, as the Magistrate Judge found, they lack an injury to a commercial interest.

First, Plaintiffs claim that the Magistrate Judge engaged in a "flawed application" of *Lexmark*. (ECF No. 34 at 9.) Plaintiffs concede that *Lexmark*'s application to a false advertising claim, which requires an allegation of injury to a commercial interest "in reputation or sales," (*Id.* (citing *Lexmark*, 572 U.S. at 132), "is obviously a focus on the *plaintiff's* commercial interest and injury thereto." (*Id.* (emphasis original).) That is because the only viable Lanham Act purpose for false advertising claims is "protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition." (*Id.* at 10); *see also Lexmark*, 572 U.S. at 131. By contrast, Plaintiffs suggest that the Magistrate Judge failed to consider that the "other purpose of the Lanham Act . . . 'making actionable the deceptive and misleading use of marks in [commerce within the control of Congress]' . . . only requires an allegation that the *defendant* engaged in commerce." (ECF No. 34 at 10 (emphasis original).) Thus, Plaintiffs claim that the "plain language" of the Lanham Act simply "requires an allegation that the *defendant* engaged in commercial activity." (*Id.*)

Plaintiffs miss the point of the Lanham Act. The Act's use and definition of the term "mark" expresses the need for a plaintiff's engagement or intended engagement in commerce. As stated above, the "trademark" is used to "distinguish [a person's] good . . . from those

8

manufactured or sold by others." 15 U.S.C. § 1127. The "service mark" is used "to identify and distinguish the services of one person, including a unique service, from the services of others." *Id.* A "certification mark" is "a word, name, symbol, or device" used to provide a consumer with information related to the "characteristics of [a] person's goods or services or" information on those that created the good or service. *Id.* Finally, a "collective mark" is "a trademark or service mark used by [or intended to be used by] the members of a cooperative, an association, or other collective group or organization." *Id.* All four make up the definition of "mark" under the Lanham Act. *Id.*

Thus, when the Lanham Act protects against the "deceptive and misleading use of marks in such commerce," *id.*, the scope of protection for "any word, name, symbol, or device" must meet the definition of a mark. Since acquiring a mark requires some interaction, or intended interaction, with commerce on the part of the plaintiff, it was not wrong for the Magistrate Judge to conclude that, under the zone of interest of a false association claim, Plaintiffs were required to establish some intended use in that commerce.

Further, the Magistrate Judge's conclusion is consistent with other courts which have addressed this same issue. *See, e.g.*, *F.M.D. Holdings LLC v. Regent Financial Corporation*, 2021 WL 5883136, at *21 (N.D. Tex. Dec. 10, 2021) ("A party seeking to assert trademark-related claims under the Lanham Act and state law must generally show the mark was 'used in commerce.'" (citing 15 U.S.C. §§ 1114(1), 1125)); *see also Condit v. Star Editorial, Inc.*, 259 F. Supp. 2d 1046, 1052 (E.D. Cal. 2003) ("Since the Lanham Act permits protection of a mark adopted with commercial 'intent to use,' not only after 'actual use,' and the legislature '. . . expects the courts to interpret the section' as trademark law evolves; a claimant must at the least allege an

9

existing intent to commercialize an interest in identity to have standing for a Lanham Act false association claim."), *Abrahams v. Simplify Compliance, LLC*, 021 WL 1197732, at \*4 (D.D.C. Mar. 30, 2021) ("Thus, whether viewed as elements of the claim . . . or threshold limitations on the class of plaintiffs whom Congress has authorized to sue . . . , the basic point is the same: a plaintiff may not prevail on a false association claim without alleging a commercial injury." (quotations omitted)); *but see Estate of Bisignano v. Exile Brewing Co.*, 694 F. Supp. 3d 1088, 1133 (S.D. Iowa 2023) ("[Under a false association claim, i]t should not matter whether the plaintiff is making separate commercial use of the name or likeness or simply wishes for it not to be used in the commercial realm at all.")

Given the weight of authority, and the analysis of other district courts within the Fourth Circuit,[3] this Court will not depart from the Magistrate Judge's conclusion: to meet the Lanham Act's zone of interest for a false association claim, a plaintiff must assert a commercial injury.

Plaintiffs are correct in the sense that a false association claim is driven by the misuse of marks by the defendant. *See Belmora*, 819 F.3d at 706 ("Under § 43(a), it is the defendant's use in commerce—whether of an offending 'word, term, name, symbol, or device' or of a 'false or misleading description [or representation] of fact'—that creates the injury under the terms of the statute."). However, that does not remove the requirement that a plaintiff have some kind of injury to a commercial interest. *See id.* ("What § 43(a) does require is that [a plaintiff] was 'likely to be damaged' by [a defendant's] 'use[ ] in commerce' of [a plaintiff's] mark and related advertisements."). That is, a plaintiff must plead an injury to their mark. Since the Magistrate

---

[3] Which will be discussed *infra*.

Judge did not conclude anything contrary to the Lanham Act's language, Plaintiffs' objection to this point is **OVERRULED**.

iii.    <u>Objection two: the Magistrate Judge erred by relying on unpublished district court opinions</u>

Plaintiffs next claim the Magistrate Judge erred when he "relied upon unpublished district court cases" that a commercial injury was necessary to be within the zone of interest of a Lanham Act claim.  (ECF No. 34 at 12.)   They claim that "none of the cases cited by the Magistrate Judge stand for a proposition that would prevent Plaintiffs from establishing" their preferred interpretation of the zone of interests.  (*Id.* at 12–13.)   The Court will address each of the cases and Plaintiffs' arguments about those cases in turn.

First, Plaintiffs claim that "one of the cases cited by the Magistrate Judge . . . actually supports Plaintiffs' position that, for their false association claim, they need only allege deceptive and misleading use of marks by Defendant in commerce."  (*Id.* at 13.)   Without any further explanation, Plaintiffs cite language from *Moreland v. Pal of Mine Corp.* that states "[t]he Court finds that the plaintiffs adequately allege that they fall within the Lanham Act's zone of interests, because they assert that Empire's unauthorized use of their images misled and deceived customers, thereby affecting the customers' purchasing decisions."   2024 WL 3937267, at *4 (E.D. Va. Aug. 26, 2024).   In that case, however, the plaintiffs were "models who earn[ed] a living by licensing their images to companies, magazines, and individuals for use in advertising products and services."  *Id.* at *1.   Rather than pay them for the use of their images, the defendant "posted without the respective plaintiffs' knowledge, consent, or authorization" and no plaintiff "received any remuneration for [defendant's] unauthorized use of their images."  *Id.*   While the case's posture was on a motion for default judgment, the "harm elements" that justified granting the

motion for plaintiffs was plausibly a commercial injury. *See id.* at *5. The images of the models were sufficiently commercialized, since they "earn[ed] a living by licensing their images." *Id.* at *1. Thus, the "false impression that the plaintiffs were affiliated with the club" commercially harmed plaintiffs since it was an association of themselves without the required payment.

By contrast, Plaintiffs here have not indicated that their image has been commercialized. They have not said how they draw income from use of their image, nor have they indicated how their image is a mark under the Lanham Act. Accordingly, *Moreland* does not stand for any proposition that supports Plaintiffs' reading of the Lanham Act.

Next, Plaintiffs claim that in "two other cases cited by the Magistrate Judge, the claimants had asserted a false advertising claim, and they had not asserted a false association claim." (ECF No. 34 at 13 (citing *Church Ekklasia Sozo Inc. v. CVS Health Corp.*, 2022 WL 1572732, at *8 (W.D.N.C. Feb. 25, 2022) and *Hyundai Motor America, Inc. v. Direct Technologies Int'l, Inc.*, 2018 WL 4110544, at *3 (W.D.N.C. Aug. 29, 2018)).) Of course, the Magistrate Judge analyzed the zone of interests of both the false association and false advertising claims simultaneously. (*See* ECF No. 33 at 11 ("The undersigned finds Defendant's arguments regarding Plaintiffs' lack of standing to bring Lanham Act claims (Counts I and II) to be most compelling.").) Thus, it is logical for some of the cases relied on by the Magistrate Judge to address the issue of false advertising claims. Given Plaintiffs objection here, however, the Court will simply disregard the Magistrate Judge's citation of those cases for purposes of this review.

In a similar vein, Plaintiffs contend that *Nobriga, v. La Kumbala*, 2024 WL 2951753, at *1 (E.D.N.C. May 23, 2024), which is also cited by the Magistrate Judge, should be disregarded because "the magistrate judge in that case did not conduct an analysis of the zone of interests."

12

(ECF No. 34 at 14.)   Instead, the magistrate judge there "only mentioned the need for a plaintiff to show 'economic or reputational injury' in connection with its discussion of damages, quoting from *Lexmark*'s examination of proximate causality, not the zone of interests."   (*Id.* (citing *Nobriga*, 2024 WL 2951753 at *10).)   The Magistrate Judge did set forth analysis with regard to prong one of *Lexmark*, the zone of interests.   (*See* ECF No. 33 at 11 ("As Defendant argues, this case does not seem to fit the purpose, or 'zone of interests,' of the Lanham Act. . . .").)   For the limited purpose of the zone of interest analysis, the Court will disregard this case as well.[4]

Last, Plaintiffs argue that in "three cases cited by the Magistrate Judge" involving false association claims, none of them "required [a plaintiff] to allege an injury to a commercial interest in reputation or sales" to fall within the zone of interest of the Lanham Act.   (ECF No. 34 at 14.)   However, those three cases do involve commercial injuries.   In *Davalos v. GGC-Baltimore, LLC*, the court found a false association claim fell within the zone of interests because the defendant "deprived [p]laintiffs of income related to commercialization of their images."   2025 WL 266673, at *3 (D. Md. Jan. 22, 2025).   This deprivation stemmed from defendant's displaying of images of plaintiffs, who were strippers, which created "the false impression with potential clientele that each [p]laintiff either worked as a stripper at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club."   *Id.*   Similarly in *Geiger v. Abarca Family, Inc.*, plaintiffs were a "group of well-known professional model[s]" who's images were displayed by a club to attract clientele to it.   2022 WL 4242838, at *1–2 (E.D. Va. July 29, 2022).   While the court rejected the argument that the Lanham Act requires a competitor injury, it did find the

---

[4] One has to question why Plaintiffs would want to highlight this fact.   After all, the second prong of statutory standing, proximate causation, is also required to have standing under the Lanham Act.   *See Lexmark*, 572 U.S. at 129.   A failure to meet that would serve as an independent basis to adopt the Magistrate Judge's recommendation to dismiss this claim for failure to meet statutory standing.

13

claim was within the Lanham Act's zone of interest since defendant's use of plaintiff's image "deprives [Plaintiffs] of income they are owed relating to the commercialization of their images." *Id.* at *8. Finally, in *Ullah v. Linkenauger*, a former college basketball player brought suit against a former business partner who used the plaintiff's image and likeness to sell video basketball lessons featuring plaintiff. 2020 WL 9459338, at *1–2 (E.D. Va. Oct. 2, 2020). The court found that the plaintiff's claim fell within the Lanham Act's zone of interest because he "traded on and commercialized his name and image as a basketball instructor and that Defendants have essentially misappropriated that commercialized name and image." *Id.* at *6.

The throughline of each of these cases is that they involved plaintiffs who were "persons engaged in . . . commerce," such that they needed to be "protect[ed] . . . against unfair competition." *See* 15 U.S.C. § 1127. *See also, e.g.*, *Geiger*, 2022 WL 4242838 at *8 (citing 15 U.S.C. § 1127 in analyzing the zone of interest for a false association claim). In *Geiger* and *Davalos*, the commercialization of the plaintiffs' likenesses stems from the fact that they were professional models. In *Ullah*, the former basketball player plausibly alleged that he commercialized his name, image, and likeness through the creation and sale of training videos. In other words, each plaintiff in the cases cited by the Magistrate Judge include at least some allegation that the plaintiff enjoyed commercial use of their image and likeness.

By contrast, none of the Plaintiffs here have alleged they used their image or likeness in a commercial setting. Whereas the models in the preceding cases at least in some respect claim that they have monetized their image and likeness, Plaintiffs here have not. True, these cases were not evaluating the Lanham Act's purpose of "making actionable the deceptive and misleading use

14

of marks."[5]  (ECF No. 34 at 14.)  Yet, Plaintiffs have failed to show this Court any additional caselaw that supports their position or analyzed a claim under this alternative purpose.  Plaintiffs have not persuaded the Court that the Magistrate Judge erred in reaching his underlying conclusion.

While Plaintiffs are correct that "[n]one of the cases stand for a proposition that would prevent" their preferred interpretation, (ECF No. 34 at 15), this Court nonetheless believes that the Magistrate Judge's conclusion, that a false association claim requires an injury to a commercial interest, is supported by persuasive authority.  Accordingly, the Magistrate Judge did not err in interpreting those cases as requiring a false association plaintiff to plead a commercial injury and the objection is **OVERRULED**.

     iv.     <u>Objection three: the Magistrate Judge erred by failing to apply *Belmora*</u>

Plaintiffs next suggest that the Magistrate Judge erred because he did "not cite, let alone discuss, the Fourth Circuit's seminal post *Lexmark* case" of *Belmora*.  (ECF No. 34 at 15.) Chiefly, they note that *Belmora* clarified that false association claims enable a court to look to the "existence of allegations that the defendant engaged in deceptive and misleading use of marks" as a basis of meeting the Lanham Act's zone of interests.  (*Id.*)  Plaintiffs then claim *Belmora* supports their contention that false association claims "focus[] on the *defendant's* commercial interests to determine whether the allegations advance the Lanham Act's zone of interests."  (*Id.* (emphasis original).)

---

[5] It is also possible that the failure to address that purpose could potentially be explained if the judges in those respective cases were not convinced the plaintiffs' images were "marks" within the meaning of the Lanham Act.

As the Court has already explained, and as *Lexmark* makes clear, the alternative purposes of protecting against the "deceptive and misleading use of marks" is relevant for a Lanham Act zone of interest analysis.

Further, the argument regarding the need to only show "defendant's commercial interest" for a false association claim is previously addressed in this opinion, *see supra* Part A.ii, and does not need to be repeated. The only one additional point Plaintiffs make to this argument is that the panel in *Belmora* favorably cited a concurring opinion from the late Justice Stevens.

Plaintiffs claim that "*Belmora* cited and quoted from Justice Stevens's concurring opinion . . . whose citation by the Fourth Circuit left no doubt that the court of appeals understood the distinction between false advertising and false association claims." (ECF No. 34 at 16.) They contend that citation to this concurring opinion, which they admit predates *Lexmark*, proves that a false association claim "focuses on the defendant's commercial interests to determine whether the allegations advance the Lanham Act's zone of interests." (*Id.*) That quote simply states: "Trademark law protects the public by making consumers confident that they can identify brands they prefer and can purchase those brands without being confused or misled." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 784 n.19 (1992) (Stevens, J., concurring). It is not clear, and Plaintiffs fail to explain, why this citation to non-binding dicta exempts a plaintiff from needing to plead their own commercial injury. Yet more fundamentally, the Supreme Court gave lower courts in *Lexmark*, issued in 2014, the guiding purposes to consider for the zone of interest. That is, the "detailed statement of the statute's purposes" provided in 15 U.S.C. § 1127. *Lexmark*, 572 U.S. at 131. In other words, Justice Stevens's concurring opinion, although cited in *Belmora*, does nothing to explain why plaintiffs are not required to plead a commercial injury.

16

Plaintiffs also claim that *Belmora* itself supports their interpretation that they do not need to prove a commercial injury. In *Belmora*, the Fourth Circuit confirmed that a false association claim may advance the Lanham Act's purpose of "making actionable the deceptive and misleading use of marks" in "commerce within the control of Congress." 819 F.3d at 711. The primary reason for reaching that decision, however, stemmed from a question regarding foreign marks. While the district court found that foreign marks could not be protected by the Lanham Act, the Fourth Circuit found that the "plain language contains no unstated requirement that a [Lanham Act] plaintiff have used a U.S. trademark in U.S. commerce to bring a Lanham Act unfair competition claim." *Id.* at 710.

The *Belmora* court then engaged in a lengthy analysis of the plaintiff's standing to bring a false association claim. The plaintiff there claimed that the "misleading association with [defendant's product] has caused [its] customers to buy the [defendant's product] in the United States instead of purchasing [plaintiff's product] in Mexico." *Id.* at 711. Alternatively, the customers would "forego purchasing the [product] they know when they cross the border to visit Mexico because [defendant's] alleged deception led them to purchase the [defendant's] product in the United States." *Id.* Either way, the court found that plaintiff potentially "los[t] sales revenue because [defendant's] deceptive and misleading use of [plaintiff's mark] conveys to consumers a false association with [plaintiff's] product." *Id.* Thus, the court concluded that the plaintiff "adequately pled a [false association claim] for purposes of the zone of interest prong," in part because the "economic activity [at issue was] within the control of Congress." *Id.*

Plaintiffs attempt to explain away this analysis as dicta. (*See* ECF No. 34 at 17 ("The court's discussion of BCC's alleged lost sales revenue was, therefore, nonbinding dicta, as it was

17

not necessary to the court's resolution of the zone of interests issue.").)   Whether or not it is dicta, it presents yet another case where a court analyzes a Lanham Act claim through the lens of a commercial injury to the plaintiff.   As with the district opinions cited by the Magistrate Judge, the plaintiff in *Belmora* established how misuse of their protected mark caused economic injury to themselves.   The plaintiff in *Belmora*, having pled an economic injury, was found to have been within the Act's zone of interest.   Nothing in the opinion suggests that, had the plaintiff not suffered a commercial injury, it still would have had standing under the Lanham Act.   At best, *Belmora* fails to advance Plaintiffs' position.

Further, Plaintiffs' argument that their false association claim is within the zone of interests is unavailing.   First, Plaintiffs claim that, "as previously noted, the Magistrate Judge acknowledged that Plaintiffs had alleged facts comprising the Lanham Act's enumerated purpose . . . of 'making actionable the deceptive and misleading use of marks in [commerce within the control of Congress].'"   (ECF No. 34 at 18 (no citation given).)   A search of the M&R reveals no support for the proposition that Magistrate Judge "acknowledged" such facts.   They do claim, however, that the Magistrate Judge recited facts that would favor their interpretation of the zone of interests.   (*See id.* at 18–19.)   Those facts essentially are that "Defendant obtained photographs 'of Plaintiffs and other individuals residing in Union County' and without authorization created modified versions of the photos and 'used those modified versions repeatedly to advertise and promote Defendant's East Frank restaurant, retail, and entertainment services.'"   (*Id.* (citing ECF No. 33 at 2).)   This, they assert, is enough to meet the zone of interest of the Lanham Act.

Unlike *Belmora*, Plaintiffs have not alleged any lost sales, diverted profits, or confused customers.   Rather, they have essentially stated that Defendant is profiting off of their likeness.

18

As the Magistrate Judge found, that very well may be a tort under North Carolina law. (ECF No. 33 at 11 ("In short, the undersigned is persuaded that while Plaintiffs likely have viable state law claims based on the alleged underlying events of this case, their attempt to allege wrongdoing under federal statute, namely, the Lanham Act, is misplaced.").) It is not, however, the kind of commercial injury, as contemplated by *Belmora* and other intra-circuit cases, necessary to plead a Lanham Act claim.[6]

Plaintiff's objection that the Magistrate Judge failed to consider and apply *Belmora* is **OVERRULED**.

Plaintiffs have failed to demonstrate that their images are marks or that they have pled a claim within the Lanham Act's zone of interests. Each serve as an independent reason that the Magistrate Judge's recommendation was correct. For the reasons explained above, Plaintiffs' objections are **OVERRULED**.

### B. Leave to amend

As a final attempt to save their Lanham Act claims, Plaintiffs seek leave to amend their complaint under Federal Rule of Civil Procedure 15. (ECF No. 34 at 22–24.) In support of their Motion, they attached a declaration by just one of the seven Plaintiffs who claims she experienced the kind of commercial injury sufficient to place her within the Lanham Act's zone of interest. (*Id.*, *see also* ECF No. 34-1 at 1–5.)

---

[6] Further, Plaintiffs' last ditch argument, that a plaintiff who has "not yet suffered a *commercial* injury" can establish a Lanham Act claim, is unavailing. (*See* ECF No. 34 at 21.) Their claim that liability extends to "any person who believes that he or she is likely to be damaged by such act," (*Id.* citing 15 U.S.C. § 1125(a)(1)(B)), would still need to allege that they intended to commercialize their image or likeness. Plaintiffs have failed to do that, and thus are not within the zone of interests of a Lanham Act claim, even for a potential future harm.

19

Given the timing of this Motion, the Federal Rules of Civil Procedure state that Plaintiffs may amend their pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). A court should "freely give leave when justice so requires." *Id.* Nevertheless, a court should not grant leave to amend when there is "bad faith, undue prejudice to the opposing party," or granting an amendment would be "futil[e]." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"A denial based on futility should only be granted when the proposed amendment is 'clearly insufficient or frivolous on its face.'" *Veolia Es Special Servs., Inc. v. Techsol Chem. Co.*, 2007 WL 4255280, at *8 (S.D. W. Va. Nov. 30, 2007) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). "A proposed amendment is also futile if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N.C. Dep't Transportation*, 914 F.3d 213, 228 (4th Cir. 2019).

Defendant offers three reasons why this Court should deny Plaintiffs leave to amend. First, they argue they are prejudiced by Plaintiffs' delay in moving to amend. Second, it argues that any such proposed complaint would be futile. Finally, Defendant argues that denial is warranted because of Plaintiffs' failure to adhere to the Local Rules. All three arguments have merit.

i. <u>Prejudice</u>

Defendant would be prejudiced if this Court allowed Plaintiffs to amend their complaint at this stage. To start, this is not Plaintiffs' first amended Complaint. Defendant made a previous motion to dismiss on the original Complaint. In that motion, Defendant raised the argument about Plaintiff's failure to plead a commercial injury. Following that motion, Plaintiffs chose to amend

20

their Complaint. Yet, Plaintiffs did not re-plead with facts alleging a commercial injury. Instead, they pressed on without pleading the facts that they now want to add. As Defendant stated, it "was forced to brief a motion to dismiss *twice*." (ECF No. 35 at 18 (emphasis original).) It was only after the M&R sided with Defendant that Plaintiffs sought "to 'fix' their pleading by adding facts that Plaintiffs have known since before they filed this action." (*Id.*)

This delay harms Defendant and, frankly, makes referral to the Magistrate Judge a futile exercise. *See Cash v. Lees-McRae College, Inc.*, 2019 WL 276842, at *3 (W.D.N.C. Jan. 22, 2019) ("To allow the Plaintiffs to amend their Complaint . . . after the Magistrate Judge has issued a formal recommendation regarding the disposition of a dispositive motion . . . not only prejudice[s] the Defendants, who have expended the time and expense of fully briefing a motion to dismiss, but would also encourage dilatory practices on the part of plaintiffs in delaying motions for leave to amend until after they have the benefit of a Magistrate Judge's opinion.") (quotation omitted). If a plaintiff can sit on information and only seek leave to amend once they have lost the first time, then defendants will expend unnecessary resources defending claims multiple times. That is what happened here. Because this is the kind of prejudice that justifies denying leave to amend, the Court will **DENY** Plaintiffs' Motion.

    ii.   <u>Futility</u>

Defendant also properly notes that any proposed amended complaint would be futile.

Attached to Plaintiffs' Objections and Motion is a declaration by one of the Plaintiffs, Lisa Metzger.[7] In that declaration, Plaintiff Metzger states that she uses online social media "to

---

[7] It is best practice for a plaintiff seeking leave to amend their complaint to attach a proposed amended complaint. Plaintiffs have not done that here, so this Court will have to infer what would be contained in a proposed complaint based on the declaration that was attached.

support [her] small business ventures." (ECF No. 34-1 at ¶¶ 3–5.) She also states that she "expect[s] to continuing earning income from [her] residual sales" on her various platforms. (*Id.* at ¶ 6.) Plaintiff Metzger avers that "protecting [her] name and image are essential to maintaining the credibility [her] clients['] trust when they . . . choose services from [her businesses]." (*See id.* at ¶ 10.) Her name and image are important because of her company's "commitment to Christian values." (*Id.* at 8.) Any association with Defendant's business would apparently damage Plaintiff Metzger's image as a "good Christian." (*See* ECF No. 34 at 23.) Of note, only Ms. Metzger asserts such an injury.

Even taking all of Plaintiff Metzger's assertions as true, she has not stated a cognizable injury under Article III. For example, Plaintiff Metzger states in her declaration that "[i]t is *likely* that [her] customers and clients have seen or will see the modified images posted by Defendant[]." (ECF No. 34-1 at ¶ 13 (emphasis added).) Further, she states that false association with Defendant's business "*could* damage [her] credibility and create confusion and a false association as to the causes to which [she] actually [is] protesting, to the detriment of [her] credibility and [her] business(es) and commercial activities." (*Id.* at ¶ 15 (emphasis added).)

Whatever might have happened or could happen is irrelevant. To meet Article III's case or controversy requirement, Plaintiff Metzger needed to state that she was actually, in fact, injured. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (holding that "the irreducible constitutional minimum of standing consists of three elements," among which is the requirement that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical.'"); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 ("Injury in fact is a

constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" (quotation omitted)).    It is not enough for her to say that use of her name, image and likeness "proximately caused harm to [her] credibility."    (ECF No. 34 at 5.)    "[L]egal conclusions couched as facts" are insufficient to defeat a motion to dismiss.  *Cf. Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quotation omitted).    Rather, the complaint must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The alleged commercial injuries are nothing more than mere speculation.  It is equally plausible that one could speculate that these circumstances could draw customers who sympathize with the cause Ms. Metzger seeks to advance in this case.  Plaintiffs have failed to provide any facts or show the existence of any inferences that would plausibly ensure a proposed complaint survives a motion to dismiss.  Any attempt to amend now would be simply futile.

### iii.    Failure to Adhere to the Local Rules

One final reason to deny the Motion to Amend is Plaintiffs' counsel's failure to adhere to the Local Rules of this Court.  Plaintiffs were required to "show that counsel have conferred and attempted in good faith to resolve areas of disagreement, or describe the timely attempts of the movant to confer with opposing counsel."  L. R. Civ. P. 7.1(b).  Further, Plaintiffs were required to file their Motion separately with an accompanying memorandum.  L. R. Civ. P. 7.1(c).  They were not, however, permitted to include this Motion in their responsive brief.  *See* L. R. Civ. P. 7.1(c)(2).

Plaintiffs have not followed any of these rules. This Court is empowered to "summarily den[y]" the motion for these failures. *See* L. R. Civ. P. 7.1(b).

*       *       *

It is clear that Plaintiffs are not entitled to leave to amend. This last-ditch attempt to avoid dismissal would both prejudice Defendant and nonetheless be futile. Further, Plaintiffs have failed to adhere to the Local Rules. Each serve as independent reasons to deny Leave to Amend.

### IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Objections to the Magistrate Judge's M&R, (ECF No. 34), are **OVERRULED**, and the Magistrate Judge's M&R is **ADOPTED**. (ECF No. 33.) Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' Lanham Act claims **WITH PREJUDICE**, (ECF No. 17), and **GRANTS** the remainder of Defendant's and Plaintiffs' Motion to Dismiss (*Id.*, ECF No. 25), all state law claims insofar as the dismissal is **WITHOUT PREJUDICE** and only for lack of subject matter jurisdiction.[8]

Further, the Court **DENIES** Plaintiffs' Motion for Leave to Amend. (ECF No. 34).

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 19, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[8] As indicated by the Magistrate Judge, Plaintiffs and Defendant are free to file their claims in state court should they elect to do so.